1   Shirin Sinnar, State Bar No. 230005
    *shirins@asianlawcaucus.org*
2   Asian Law Caucus
    939 Market St., Suite 201
3   San Francisco, CA 94103
    Tel (415) 896-1701
4   Fax (415) 896-1702

5   Marcia Hofmann, State Bar No. 250087
    *marcia@eff.org*
6   Electronic Frontier Foundation
    454 Shotwell Street
7   San Francisco, CA 94110
    Tel (415) 436-9333
8   Fax (415) 436-9993

9   Attorneys for Plaintiffs Asian Law Caucus and
    Electronic Frontier Foundation
10

**ORIGINAL**

**E-filing**

11              **IN THE UNITED STATES DISTRICT COURT**

12          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13                  **SAN FRANCISCO DIVISION**

14   ASIAN LAW CAUCUS                    Case No.  **CV 08    0842**

15       and                          )  COMPLAINT FOR INJUNCTIVE
                                       )  RELIEF FOR VIOLATION OF THE
16   ELECTRONIC FRONTIER FOUNDATION,   )  FREEDOM OF INFORMATION ACT,
                                       )  5 U.S.C. § 552
17              Plaintiffs,            )
                                       )
18          vs.                        )
                                       )
19                                     )
     UNITED   STATES   DEPARTMENT   OF )
20   HOMELAND SECURITY,                )
                                       )
21              Defendant.             )
     _____)

22                      **INTRODUCTION**

23       1.    The Asian Law Caucus ("ALC") and the Electronic Frontier Foundation ("EFF")

24   (collectively, the "Plaintiffs") bring this action under the Freedom of Information Act ("FOIA"), 5

25   U.S.C. § 552, for injunctive and other appropriate relief to enforce their right to agency records

26   from Customs and Border Protection ("CBP"), a component of Defendant Department of

27   Homeland Security ("DHS").  Specifically, Plaintiffs seek release of agency records concerning

28   CBP's policies and procedures on the questioning, search, and inspection of travelers entering or

                                        1

1     returning to the United States at ports of entry.

2                                   **JURISDICTION**

3           2.     This Court has subject matter jurisdiction over this action and personal

4     jurisdiction over the parties under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5                **VENUE AND INTRADISTRICT ASSIGNMENT**

6           3.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C.

7     § 1391(e).

8           4.     Assignment to the San Francisco division is proper pursuant to Local Rule 3-2(c)

9     and (d) because a substantial portion of the events giving rise to this action occurred in this district

10     and division, where Plaintiffs are headquartered.

11                                       **PARTIES**

12           5.     Plaintiff ALC is a not-for-profit corporation established under the laws of the

13     State of California, based in San Francisco, California. ALC is the nation's first legal and civil

14     rights organization serving Asian American and Pacific Islander communities. Recognizing that

15     social, economic, political, and racial inequalities continue to exist in the United States, ALC is

16     committed to the pursuit of equality for all sectors of society. As part of this mission, ALC works

17     to curb racial and ethnic profiling, employment discrimination, and other civil rights violations

18     targeting Muslims, Middle Easterners, and South Asians in the United States. Over the past year,

19     ALC has received complaints from more than twenty residents of Northern California who report

20     that they were subjected to lengthy secondary inspections, searches, and interviews at U.S. ports of

21     entry, including San Francisco International Airport. In response, ALC conducts outreach events

22     and trainings and disseminates information to help community members understand their legal and

23     civil rights in these contexts. ALC also represents several clients in matters relating to their

24     questioning and search at the airport.

25           6.     Plaintiff EFF is a not-for-profit corporation established under the laws of the

26     State of California, with offices in San Francisco, California and Washington, DC. EFF is a donor-

27     supported membership organization that works to inform policymakers and the general public

28     about civil liberties issues related to technology, and to act as a defender of those liberties.

1    Specifically, EFF strives to protect the rights of free expression, freedom of the press, fair use,

2    anonymity, security, and privacy among many others, as they relate to computing and the Internet.

3    EFF seeks to inform the public on these issues through several means, including a frequently

4    visited web site and an online newsletter. In support of its mission, EFF frequently uses the FOIA

5    to obtain and disseminate information concerning the activities of federal agencies.

6         7.    Defendant DHS is a Department of the Executive Branch of the United States

7    government and is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). CBP is a component

8    within Defendant DHS. CBP is subjecting many travelers returning from abroad, including United

9    States citizens and legal permanent residents from Northern California, to lengthy questioning and

10   intrusive searches. Plaintiffs seek agency records in order to determine what policies and

11   procedures exist governing CBP's questioning and searches of individuals at the nation's ports of

12   entry. CBP has possession of the records sought by Plaintiffs, and is responsible for responding to

13   Plaintiffs' records request.

## FACTS

### A. CBP Subjects Many Travelers to Repeated and/or Excessive Screenings at the Border

16        8.    In recent years, CBP officials have been carrying out border inspections in a

17   manner that raises significant civil liberties concerns. Many Northern California residents,

18   including United States citizens, have reported to Plaintiffs that CBP officials subjected them to

19   lengthy and intrusive questioning upon their return to the United States. Similar stories of repeated

20   and/or invasive screenings at the border have been discussed by the national news media. *See, e.g.,*

21   Ellen Nakashima, *Terror Suspect List Yields Few Arrests; 20,000 Detentions in '06 Rile Critics,*

22   Wash. Post, Aug. 25, 2007, at A1; Neil MacFarquhar, *Borders Spell Trouble for Arab-American,*

23   N.Y. TIMES, Apr. 29, 2007, §1, at 25; Molly Kavanaugh, *Do Guards at the Border Cross a*

24   *Line?,* The Plain Dealer (Cleveland), Apr. 8, 2007, at A1.

25        9.    According to complaints received by Plaintiffs and media accounts, CBP

26   officials have questioned individuals at length on such subjects as their families, religious practices

27   and associations, political beliefs, volunteer activities, educational background, and previous

1    travels. In addition, travelers report that CBP agents have inspected highly personal items, such as
2    their reading material, business cards collected from friends and colleagues, handwritten notes,
3    personal photographs, and cell phone directories, and have sometimes made copies of this
4    information. CBP officers have also opened travelers' laptop computers to examine their saved
5    files and look at their stored browser information. Individuals who protest such questioning or
6    searches have been told that they have no choice but to cooperate as they are at an international
7    border. Travelers report feeling anxious, fearful, and helpless in these situations, particularly
8    because they have little understanding of their legal rights to remain silent or access legal counsel
9    in this setting.

10        10.    Many individuals allege that they face this level of scrutiny every time they
11    travel, raising the concern that they are being singled out because of racial, ethnic, or religious
12    profiling, or because their names are mistakenly flagged in a CBP watch list or national security
13    database. Portions of the government's main terrorist watch list, the Terrorist Screening Center
14    Database ("TSDB"), are used by CBP to screen international travelers. The TSDB has been the
15    subject of widespread criticism. In fall 2007, for instance, both the Inspector General and the
16    Government Accountability Office issued reports spotlighting the TSDB's spiraling growth rate,
17    persistent accuracy problems, and inadequate opportunities for redress. *See* Gov't Accountability
18    Office (GAO), Terrorist Watch List Screening: Opportunities Exist to Enhance Management
19    Oversight, Reduce Vulnerabilities in Agency Screening Processes, and Expand Use of the List
20    (Oct. 2007); U.S. Dep't of Justice Office of the Inspector General (OIG), Follow-Up Audit of the
21    Terrorist Screening Center (Sept. 2007).

22        **B.    CBP Has Failed to Provide Records as Required under the FOIA**

23

24        11.    On October 31, 2007, ALC and EFF faxed and sent via postal mail a letter to
25    CBP pursuant to the FOIA requesting disclosure of the following records generated from
26    September 11, 2001, to the present:

27

28

4

- Policies and procedures on the questioning of travelers, specifically as follows:

    a. Policies and procedures on the questioning of travelers regarding political views, religious practices, and other activities potentially covered by the First Amendment;

    b. Policies and procedures for responding to a traveler's refusal to answer questions;

    c. Policies and procedures for permitting a traveler to access legal counsel or invoke a right to remain silent during inspection at the border; and

- Policies and procedures on inspections and searches of travelers' property, specifically as follows:

    a. Policies and procedures on the photocopying, reproduction, and retention of written materials obtained through border searches, including documents that CBP officers have found not to violate the law;

    b. Policies and procedures on conducting searches and duplicating files from laptop computers, MP3 players, digital cameras, cell phones, and other electronic devices;

    c. Copies of the two 1986 Customs Directives, *Review, Copying and Seizure of Documents* (Customs Directive 3300-04) and *Restrictions on Importation of Seditious Matter* (Customs Directive 2210-01), and any amendments or revisions to these materials;

    d. Policies and procedures on the protection of confidential information in travelers' possession, such as information covered by trade secrets, attorney-client privilege, health privacy laws, or other legal protections.

The letter sent by ALC and EFF is attached as Exhibit A.

12.    On January 2, 2008, ALC received a letter from Mark Hanson, Acting Director of the FOIA Division of the Office of International Trade at CBP. This letter was undated but came in an envelope postmarked December 26, 2007. Mr. Hanson's letter stated that CBP had received the Plaintiffs' FOIA request and would "act with all due diligence to process this request as soon as possible." The letter also explained that while CBP had determined that it had records responsive to the Plaintiffs' request, it required a time extension to collect the large number of records requested. The letter did not state which documents would be provided or withheld from Plaintiffs and the reasons therefore, did not inform Plaintiffs of their right to appeal to the head of the agency, and did not declare whether the Plaintiffs would be granted a public interest fee waiver and "news media" fee status, as the Plaintiffs had requested. Moreover, the letter did not specify

COMPLAINT FOR INJUNCTIVE RELIEF FOR VIOLATION OF THE
FREEDOM OF INFORMATION ACT, 5 U.S.C. § 552

1   an anticipated date by which the records request would be processed or suggest an alternative time

2   frame for processing. This letter is attached as Exhibit B.

3           13.    Since Mr. Hanson's letter, Plaintiffs have not received any further

4   communication from CBP regarding the records request.

5           14.    The FOIA provides that, upon receiving a request for records, an agency shall

6   make the records promptly available, shall determine within 20 working days after receipt of the

7   request whether to comply with the request, and shall immediately notify the person making the

8   request of the agency's determination and the reasons therefore. 5 U.S.C. §§ 552(a)(3)(A),

9   (a)(6)(A)(i), (a)(6)(c). More than 20 working days have passed since CBP received Plaintiffs'

10   FOIA request, and Plaintiffs have neither received a determination regarding that request nor any

11   notice of the date on which CBP intends to make a determination regarding Plaintiffs' request. *See*

12   5 U.S.C. § 552(a)(6)(B)(i)-(ii). The FOIA allows an agency to extend the time limit for issuance of

13   a determination by 10 additional working days when the agency provides written notice to the

14   requesting party, sets forth "unusual circumstances" for the extension, and provides a date by

15   which the agency expects to dispatch its determination. 5 U.S.C. § 552(a)(6)(B)(i). In the present

16   case, CBP has failed to fulfill the requirements for an extension, and the 30-working-day statutory

17   extended period has been exceeded.

18           15.    Plaintiffs have exhausted all applicable administrative remedies.

19           16.    CBP has wrongfully failed to release the requested records to Plaintiffs.

20                          **CAUSE OF ACTION**

21               **Violation of FOIA for Failure to Make Promptly Available**

22                   **Records Sought by Plaintiffs' Request**

23           17.    Plaintiffs repeat and re-allege the allegations contained in paragraphs 1 through

24   16 above, inclusive.

25           18.    Plaintiffs ALC and EFF have a legal right under the FOIA to obtain the agency

26   records they requested on October 31, 2007, and there exists no legal basis for CBP's failure to

27   make available such records.

28           19.    CBP's failure to make promptly available the records sought by Plaintiffs'

1    request violates the FOIA, 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(A)(i), and (a)(6)(C).

2        20.    Plaintiffs have exhausted all applicable administrative remedies with respect to

3    CBP's wrongful withholding of the requested records.  5 U.S.C. § 552(a)(6)(C)(i).

4        21.    Plaintiffs are entitled to injunctive relief with respect to the release and disclosure

5    of the requested documents.  5 U.S.C. § 552(a)(4)(B).

6    WHEREFORE, Plaintiffs pray that this Court:

7        1.    Order Defendant DHS and its component CBP to disclose the requested records

8            in their entireties and make copies available to Plaintiffs;

9        2.    Expedite this action pursuant to 28 U.S.C. § 1657(a);

10       3.    Award Plaintiffs their costs and reasonable attorneys' fees; and

11       4.    Grant such other relief as the Court may deem just and proper.

12

13   Dated: February 7, 2008                    Respectfully submitted,

14

15   _Shirin Sinnar (MH)_

     Shirin Sinnar, Esq.

16   ASIAN LAW CAUCUS
     939 Market St., Suite 201

17   San Francisco, CA 94103
     Telephone:  (415) 896-1701

18   Facsimile:  (415) 896-1702

19   _Marcia Hofmann_

20   Marcia Hofmann, Esq.
     ELECTRONIC FRONTIER FOUNDATION

21   454 Shotwell Street
     San Francisco, CA  94110

22   Telephone:  (415) 436-9333
     Facsimile:  (415) 436-9993

23

24   Attorneys for Plaintiffs Asian Law Caucus and
     Electronic Frontier Foundation

25

26

27

28

Exhibit A

# Asian Law Caucus

Asian Law Caucus, Inc.
939 Market Street, Suite 201
San Francisco, CA 94103
Phone: (415) 896-1701
Fax: (415) 896-1702
www.asianlawcaucus.org

October 31, 2007

By Facsimile and U.S. Mail

Freedom of Information Act Request
U.S. Customs and Border Protection
1300 Pennsylvania Ave, NW
Attn: Mint Annex Building, FOIA Division
Washington, DC 20229

Dear Sir or Madam:

This letter constitutes a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to U.S. Customs and Border Protection ("CBP") on behalf of the Asian Law Caucus ("ALC") and the Electronic Frontier Foundation ("EFF"). ALC is a public interest legal organization based in San Francisco, CA that promotes, advances, and represents the legal and civil rights of Asian and Pacific Islander communities. It is the nation's oldest civil rights organization serving Asian American communities. EFF is a nonprofit public interest organization that exists to protect and enhance our core civil liberties in the digital age. Based in San Francisco, EFF is a membership-supported organization that works on issues of free expression, freedom of press, fair use, anonymity, security, and privacy among many others, as they relate to computing and the Internet.

Background

Over the past year, ALC and EFF have received numerous inquiries from U.S. citizens and residents in Northern California regarding CBP interviews and searches at U.S. ports of entry. Many individuals have expressed concerns related to lengthy secondary inspections, searches, and interviews, including questioning about lawful religious and political activities. Others have expressed concerns about the detailed examination by CBP officers of reading material and sensitive personal information, including books, appointment calendars, notebooks, laptop computer files, cell phone directories, and other materials. A number of travelers, including U.S. citizens, report that they face this level of scrutiny every time they travel, raising the concern that their names may be improperly flagged in a CBP watch list or national security database. Many individuals have used redress mechanisms established by the U.S. government for those affected by watch lists and other screening procedures, but report no improvement in their experience.[1]

---

[1] Similar stories of repeated screenings at U.S. borders have been reported by national news media. *See, e.g., More Muslim Travelers Interrogated and Searched* (CBS-5 television broadcast, Oct. 5, 2007); Ellen Nakashima, *Collecting of Details on Travelers Documented*, WASH. POST, Sept. 22, 2007, at A1; Ellen Nakashima, *Terror Suspect List Yields Few Arrests; 20,000 Detentions in '06 Rile Critics*, WASH. POST, Aug. 25, 2007, at A1; Neil MacFarquhar, *Borders Spell Trouble for Arab-American*, N.Y. TIMES, Apr. 29, 2007, §1, at 25; Molly Kavanaugh, *Do Guards at the Border*

Records Request

We are seeking the following CBP agency records generated from September 11, 2001, to the present:[2]

    (1) Policies and procedures on the questioning of travelers, specifically as follows:

        (a) Policies and procedures on the questioning of travelers regarding political views, religious practices, and other activities potentially covered by the First Amendment;

        (b) Policies and procedures for responding to a traveler's refusal to answer questions;

        (c) Policies and procedures for permitting a traveler to access legal counsel or invoke a right to remain silent during inspection at the border; and

    (2) Policies and procedures on inspections and searches of travelers' property, specifically as follows:

        (a) Policies and procedures on the photocopying, reproduction, and retention of written materials obtained through border searches, including documents that CBP officers have found not to violate the law;

        (b) Policies and procedures on conducting searches and duplicating files from laptop computers, MP3 players, digital cameras, cell phones, and other electronic devices;

        (c) Copies of the two 1986 Customs Directives, *Review, Copying and Seizure of Documents* (Customs Directive 3300-04) and *Restrictions on Importation of Seditious Matter* (Customs Directive 2210-01), and any amendments or revisions to these materials;

        (d) Policies and procedures on the protection of confidential information in travelers' possession, such as information covered by trade secrets, attorney-client privilege, health privacy laws, or other legal protections.

---

*Cross a Line?* THE PLAIN DEALER (CLEVELAND), Apr. 8, 2007, at A1; Neil MacFarquhar, *U.S. Muslims Say Terror Fears Hamper Their Right to Travel*, N.Y. TIMES, June 1, 2006, at A1; Jeff Coen, *ACLU Expands Profiling Lawsuit*, CHI. TRIB., June 20, 2006, at 6; Kelly Kennedy, *Chicagoan Stranded at the Border; What's in a Name? Trouble, That's What*, CHI. TRIB., June 29, 2005, at 1.

[2] The term "records" as used herein includes, but is not limited to, agency records including memoranda, directives, manuals, correspondence, training materials, and other written records as well as records maintained on computers, electronic communications, videotapes, audio recordings, or in any other format.

Request for "News Media" Fee Status

We ask that search and review fees not be assessed for this request because EFF qualifies as a representative of the news media pursuant to the FOIA and 6 C.F.R. § 5.11(b)(6). In seeking this classification, we note that the Department of Homeland Security has already recognized that EFF qualifies as a "news media" requester, based upon the publication activities set forth below (see DHS stipulation, attached hereto).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil liberties in the digital age."[3] One of EFF's primary objectives is "to educate the press, policymakers and the general public about online civil liberties."[4] To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received 43,403,630 hits in June 2007 — an average of 60,282 hits per hour. The web site reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet. DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues. DeepLinks had 518,977 hits in June 2007.[5]

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy, and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to

---

[3] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/pqShowGs Report.do?npoId=561625 (last visited Oct. 24, 2007).
[4] *Id.*
[5] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

the public. The book is available online at http://cryptome.org/cracking-des.htm and for sale at Amazon.com.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded more than 2,400 times from EFF's web site in June.

Due to these extensive publication activities, EFF is a "representative of the news media" under the FOIA and agency regulations.

<u>Request for a Public Interest Fee Waiver</u>

ALC and EFF are entitled to a waiver of duplication fees because disclosure of the requested records is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 6 C.F.R. § 5.11(k). This standard is satisfied where requesters demonstrate that disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government" and that disclosure is "not primarily in the commercial interest of the requester." 6 C.F.R. § 5.11(k)(i), (ii). This request meets both these criteria.

First, the requested records clearly concern the "operations or activities of the government." 6 C.F.R. § 5.11(k)(2)(i). The records sought pertain to policies and procedures of CBP, a federal government agency, with regard to CBP border inspections and searches. The connection to government operations and activities is "direct and clear." *Id.*

Second, the information sought is "likely to contribute" to "an understanding of government operations or activities." 6 C.F.R. § 5.11(k)(2)(ii). The requested records will enhance the public's understanding of CBP policies and practices at the border, including practices relating to the questioning and search of travelers and the use of the information obtained from such inspections.

Third, the records sought will result in greater "public understanding" of CBP policies and practices, not just greater awareness within the requesting organizations. 6 C.F.R. § 5.11(k)(2)(iii). ALC will disseminate the information through its website and regular newsletter; e-mail "blasts" to members and supporters; presentations before ethnic and religious community groups, universities, and other public fora; interviews with national news media; and in written materials circulated in the Asian American community and the public at large. EFF will make the information it obtains under the FOIA available to the public and the media through its website and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above. As an organization already recognized by the Department of Homeland Security as a representative of the news media, *see supra*, page 3, EFF is entitled to a presumption that it meets this requirement. 6 C.F.R. § 5.11(k)(2)(iii).

Fourth, the disclosure will contribute "significantly" to the public's knowledge and understanding of CBP border inspections. 6 C.F.R. § 5.11(k)(2)(iv). While recent news articles about the border inspection process suggest a high level of public interest in this issue, *see* note 1 *supra*, the news coverage also reflects an absence of information about the particular issues addressed in this FOIA request. Queries from community members received by ALC and EFF also suggest a widespread

lack of understanding of travelers' rights and obligations with respect to border inspections. Disclosure of the requested records will significantly enhance public understanding of CBP policies and practices related to border questioning, searches, detentions, and the protection of individual rights by the agency.

Finally, a fee waiver is also appropriate because neither ALC nor EFF has any commercial interest in the disclosure of the requested records. 6 C.F.R. § 5.11(k)(3). Both organizations are nonprofit organizations with 501(c)(3) tax-exempt status, and derive no commercial benefit from the information at issue.

<u>Furnishing Records</u>

As you are aware, the FOIA provides that if any portions of a file are exempt from release, the remainder must be released. If you determine that any of the documents requested are exempt from release, please advise us of the specific exemptions you believe to be applicable.

Please furnish records to Shirin Sinnar, Asian Law Caucus, 939 Market Street, Suite 201, San Francisco, CA 94103. As provided in the FOIA, we expect to receive a reply within 20 working days.

If you have any questions regarding this request, please contact Shirin Sinnar at ALC at (415) 896-1701 ext. 114 or Marcia Hofmann at EFF at (415) 436-9333 ext. 116. Thank you for your cooperation.

Sincerely,

Shirin Sinnar
Staff Attorney
Asian Law Caucus

Marcia Hofmann /ss
Staff Attorney
Electronic Frontier Foundation

## ATTACHMENT:

DHS Stipulation to EFF Status as "News Media" Requester

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.  06-1988 (ESH) |
| DEPARTMENT OF HOMELAND SECURITY, | ) ) ) | |
| Defendant. | ) ) ) | |

### STIPULATED DISMISSAL OF PLAINTIFF'S SECOND CAUSE OF ACTION

Plaintiff Electronic Frontier Foundation (EFF) and Defendant Department of Homeland Security (DHS), by counsel, hereby stipulate and agree as follows:

1.    Defendant DHS has granted news media status to Plaintiff EFF based on the representations contained in EFF's FOIA requests, which demonstrate that EFF is an "entity that is organized and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6). Defendant DHS will continue to regard Plaintiff EFF as a "representative of the news media" absent a change in circumstances that indicates that EFF is no longer an "entity that is organized and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6).

2.    Accordingly, the parties herewith agree to the dismissal of Plaintiff EFF's Second Cause of Action, related to EFF's status as a "representative of the news media."

3.    The parties further agree that each will pay its own fees and costs for work on the dismissed claim.

SO STIPULATED AND AGREED this 27th day of February, 2007.

_/s/ David L. Sobel_
DAVID L. SOBEL
D.C. Bar 360418

MARCIA HOFMANN
D.C. Bar 484136

ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Avenue, N.W.
Suite 650
Washington, D.C. 20009
(202) 797-9009

*Counsel for Plaintiff*

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
D.C. Bar 418925
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

_/s/ John R. Coleman_
JOHN R. COLEMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Room 6118
Washington, D.C. 20530
(202) 514-4505

*Counsel for Defendant*

-2-

Exhibit B



U.S. Department of Homeland Security
Washington, DC 20229

**U.S. Customs and
Border Protection**

DIS-2-OT: FD NM
2008F1276

Ms. Shirin Sinnar
939 Market Street, Suite 201
San Francisco, CA 94103

Dear Ms. Sinnar:

This is in reference to and acknowledgement of your request made under the Freedom of
Information Act in which you forwarded to U.S. Customs and Border Protection (CBP)
requesting "Policies and procedures on the questioning of travelers,… and Policies and
procedures on inspections and searches of travelers' property, ….".

We attempt to process requests in order of their receipt. Accordingly, we must first process
similar requests previously received from other persons and organizations. Nevertheless, we
shall act with all due diligence to process this request as soon as possible.

We have completed a review of your request and made the determination that CBP has
responsive records to your request, however, due to the broad and expansive nature of your
request and the "voluminous" amount of records that must be located, compiled, and reviewed a
time extension is required. Should you care to narrow the scope of your request you refer to file
number 2008F1276, otherwise we will disseminate the information you requested as quickly as
possible. We will in addition make every effort to release any responsive records as they are
located and reviewed.

Thank you for your interest in U.S. Customs and Border Protection.

Sincerely,

Mark Hanson
Mark Hanson
Acting Director, FOIA Division
Office of International Trade.