Shirin Sinnar (230005)
*shirins@asianlawcaucus.org*
ASIAN LAW CAUCUS
939 Market St., Suite 201
San Francisco, CA 94103
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

Marcia Hofmann (250087)
*marcia@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333 x116
Facsimile: (415) 436-9993

Attorneys for Plaintiffs
ASIAN LAW CAUCUS and ELECTRONIC
FRONTIER FOUNDATION

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ASIAN LAW CAUCUS | NO. 08-0842 CW |
| and | **OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| ELECTRONIC FRONTIER FOUNDATION, | **AND** |
| Plaintiffs, | **NOTICE OF CROSS MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| DEPARTMENT OF HOMELAND SECURITY, | |
| Defendant. | |
| | Date:        December 4, 2008 |
| | Time:        2:00 p.m. |
| | Courtroom:   2, 4th Floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

I.  INTRODUCTION .....................................................................................................1

II.  STATEMENT OF FACTS ........................................................................................3

III.  ARGUMENT .............................................................................................................5

  A.  THE FREEDOM OF INFORMATION ACT AND THE STANDARD OF REVIEW ............................5

  B.  ALC AND EFF ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE DHS HAS IMPROPERLY WITHHELD AGENCY RECORDS ................................................................................6

    1.  DHS Has Improperly Withheld Agency Records Pursuant to Exemptions 2 and 7(E) ......................................................................................................6

      (a)  Legal Standard Under Exemption 2 ........................................6

      (b)  Legal Standard Under Exemption 7(E) ...................................7

      (c)  DHS Has Failed to Demonstrate Risk of Circumvention, and So Can Withhold Material Under Neither "High 2" Nor Exemption 7(E) ................8

      (d)  DHS Has Failed to Show That the Material Withheld Material Under "Low 2" Has No Significance to the Public ...........................................14

    2.  DHS Has Improperly Withheld Agency Records Under Exemption 5 ..................16

    3.  DHS Has Failed to Segregate Exempt Materials From Non-Exempt Material as the FOIA Requires .......................................................18

IV.  CONCLUSION ..........................................................................................................19

# TABLE OF AUTHORITIES

**CASES**

*Assembly of the State of Cal. v. Assembly Comm. on Elections*, 968 F.2d 916 (9th Cir. 1992)........... ................................................................................................................................................ 16, 17

*Azon v. Long Island Railroad*, Nos. 00-6031 (HB) & 00-6032 (HB), 2001 U.S. Dist. LEXIS 22154, 2001 WL 1658219 (S.D.N.Y. Dec. 26, 2001)............................................................................ 17

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).................................................................................. 5

*Changzhou Laosan Group v. Customs and Border Protection Bureau*, No. 04-1919, 2005 U.S. Dist. LEXIS 7075, 2005 WL 913268 (D.D.C. April 20, 2005) ........................................ 14, 15

*Church of Scientology v. Dep't of Army*, 611 F.2d 738 (9th Cir. 1980) .................................... 6, 18

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) .............................. 17

*Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981)................. 13

*Davin v. Dep't of Justice*, 60 F.3d 1043 (3rd Cir. 1995) ................................................................ 7

*Dep't of Air Force v. Rose*, 425 U.S. 352 (1976)........................................................................ 5, 7

*Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) ................. 5-6

*Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989) .................................................................... 5

*Dunaway v. Webster*, 519 F. Supp. 1059 (N.D. Cal. 1981) ............................................................ 8

*El Badrawi v. Dep't of Homeland Security*, No. 07-372, 2008 U.S. Dist. LEXIS 76038, 2008 WL 4480363 (D. Conn. Sept. 30, 2008) .............................................................................................. 9

*Electronic Privacy Information Center v. Dep't of Homeland Security*, 384 F. Supp. 2d 100 (D.D.C. 2005)............................................................................................................................... 17

*Feshbach v. SEC*, 5 F. Supp. 2d 774 (N.D. Cal. 1997)................................................................ 7, 8

*Gerstein v. Dep't of Justice,* No. 03-04893 RMW, 2005 U.S. Dist. LEXIS 41276 (N.D. Cal. Sept. 30, 2005)...................................................................................................................................... 9

*Gordon v. FBI*, 388 F. Supp. 2d 1028 (N.D. Cal. 2005).......................................................7, 9, 11

*Hamilton v. Weise*, No. 95-1161, 1997 U.S. Dist. LEXIS 18900 (M.D. Fla. Oct. 1, 1997).....8, 9, 13

*Hardy v. Bureau of Alcohol, Tobacco, and Firearms*, 631 F.2d 653 (9th Cir. 1980) ...................... 6

*Jordan v. Dep't of Justice*, 591 F.2d 753 (D.C. Cir. 1978)........................................................... 16

*Kamman v. IRS*, 56 F.3d 46 (9th Cir. 1995)................................................................................... 6

*Laroche v. SEC*, No. 05-4760 CW, 2006 U.S. Dist. LEXIS 75415, 2006 WL 2868972 (N.D. Cal.

-iii-

Oct. 6, 2006) .................................................................................................. 5

*Maricopa Audubon Soc'y v. U.S. Forest Service*, 108 F.3d 1089 (9th Cir. 1997) ................... 16, 17

*Maricopa Audubon Soc'y v. U.S. Forest Service*, 108 F.3d 1082 (9th Cir. 1997) ....................... 6-7

*Mead Data Cent. v. Dep't of the Air Force*, 566 F.2d 242 (D.C. Cir. 1977) ................................ 18

*Nat'l Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114 (9th Cir. 1988) ............................ 5, 16

*NDRC v. Dep't of Defense*, 388 F. Supp. 2d 1086 (C.D. Cal. 2005) ............................................ 18

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214 (1978) .......................................................... 5

*NLRB v. Sears*, 421 U.S. 132 (1975) ......................................................................................... 16

*NYC Apparel FZE v. Customs and Border Protection*, 484 F. Supp. 2d 77 (D.D.C. 2007) ........... 14

*Poulsen v. Customs and Border Protection*, No. 06-1743 SI, 2006 U.S. Dist. LEXIS 73670, 2006
    WL 2788239 (N.D. Cal. Sept. 26, 2006) ............................................................................. 9, 15

*Pub. Employees for Envtl. Responsibility v. EPA*, 978 F. Supp. 955 (D. Colo. 1997) ................... 8

*Rosenfeld v. Dep't of Justice*, 57 F.3d 803 (9th Cir. 1995) ....................................................... 8, 10

*Schiller v. NLRB*, 964 F.2d 1207 (D.C. Cir. 1992) ...................................................................... 7

*Shearson v. Dep't of Homeland Security*, No. 06-1478, 2007 U.S. Dist. LEXIS 16902, 2007 WL
    764026 (N.D. Ohio Mar. 9, 2007) ...................................................................................... 9, 13

*Shearson v. Dep't of Homeland Security,* No. 06-1478, 2008 U.S. Dist. LEXIS 27706, 2008 WL
    928487 (N.D. Ohio Apr. 4, 2008) ............................................................................................. 9

*Strang v. Collyer*, 710 F. Supp. 9 (D.D.C. 1989) ....................................................................... 16

*Strang v. Collyer,* 899 F.2d 1268 (D.C. Cir. 1990) .................................................................... 16

*United States v. Rozet*, 183 F.R.D. 662 (N.D. Cal. 1998) ...................................................... 16, 17

*Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975) ..................................................................... 4

*Wiener v. FBI*, 943 F.2d 972 (9th Cir. 1991) ........................................................................... 18

**STATUTES**

5 U.S.C. § 552 ...................................................................................................................passim

5 U.S.C. § 552(a)(4)(B) ............................................................................................................. 5

5 U.S.C. § 552(b) ...............................................................................................................4, 7, 18

5 U.S.C. § 552(b)(2) ............................................................................................................. 4, 6

-iv -

Opp. to Def.'s Mot. for Summ. J.;
Not. of Cross Mot. and Cross Mot. for Summ. J.; Mem. in Supp.
of Cross Mot. for Summ. J.

5 U.S.C. § 552(b)(5) ................................................................................................ 4, 16

5 U.S.C. § 552(b)(6) ...................................................................................................... 4

5 U.S.C. § 552(b)(7) ................................................................................................... 4, 7

5 U.S.C. § 552(b)(7)(C) ................................................................................................. 4

5 U.S.C. § 552(b)(7)(E) ............................................................................................. 4, 7

5 U.S.C. § 552a(e)(4)(A) ......................................................................................... 11, 14

5 U.S.C. § 552a(j) ....................................................................................................... 11

5 U.S.C. § 552a(k) ...................................................................................................... 11

**OTHER AUTHORITIES**

Bob Egelko, *Homeland Security Sued for Not Divulging Info*, S.F. Chron., Feb. 8, 2008 ............... 2

Bob Egelko, *More Leeway for Customs in Border Searches*, S.F. Chron., Sept. 24, 2008 .............. 2

CBS News, *U.S. Citizens Question Terror Watch Lists* (CBS News Broadcast, Dec. 8, 2007) ...... 10

Ellen Nakashima, *Clarity Sought on Electronics Searches,* Wash. Post, Feb. 7, 2008 ................... 2

Ellen Nakashima, *Expanded Powers to Search Travelers at Border Detailed*, Wash. Post, Sept. 23, 2008 ............................................................................................................................ 2

Ellen Nakashima, T*error Suspect List Yields Few Arrests; 20,000 Detentions in '06 Rile Critics*, Wash. Post, Aug. 25, 2007 ........................................................................................... 10

Michael J. Sniffen & Eileen Sullivan, *Questions and Answers on Terrorist List*, Associated Press, Nov. 9, 2007 ............................................................................................................... 10

Notice of Privacy Act System of Records, 66 Fed. Reg. 52,984 (Oct. 11, 2001) ......................... 11

Notice of Privacy Act System of Records, 72 Fed. Reg. 43,650 (Aug. 6, 2007) ........................... 11

Notice of Privacy Act System of Records, 72 Fed. Reg. 48,349 (Aug. 23, 2007) ......................... 11

Notice to Amend System of Records, 72 Fed. Reg. 47,073 (Aug. 22, 2007) ................................ 11

Notice to Establish System of Records, 70 Fed. Reg. 43,715 (July 28, 2005) .............................. 11

*Suit: Airport Searches of Laptops, Other Devices Intrusive* (CNN American Morning News Broadcast, Feb. 11, 2008) ............................................................................................... 2

*Terrorist Suspects, Drugs Seized at Ports*, Wash. Times, Oct. 11, 2007 ...................................... 10

U.S. Customs and Border Protection, Policy Regarding Border Search of Information (July 16, 2008) ........................................................................................................................... 13

-v-

OPP. TO DEF.'S MOT. FOR SUMM. J.;
NOT. OF CROSS MOT. AND CROSS MOT. FOR SUMM. J.; MEM. IN SUPP.
OF CROSS MOT. FOR SUMM. J.

U.S. DEP'T OF HOMELAND SEC., OFFICE OF THE INSPECTOR GEN., OIG-08-29, THE DHS PROCESS FOR NOMINATING INDIVIDUALS TO THE CONSOLIDATED TERRORIST WATCHLIST (Feb. 2008) .... 10

TO DEFENDANT AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 4, 2008, or as soon thereafter as the matter may be heard in Courtroom 2 on the 4th Floor of the United States District Court for the Northern District of California, 1301 Clay Street, Oakland, California, Plaintiffs Asian Law Caucus ("ALC") and Electronic Frontier Foundation ("EFF") will, and hereby do, cross move for summary judgment.

Pursuant to Federal Rule of Civil Procedure 56, Plaintiffs seek a court order requiring the Department of Homeland Security ("DHS") and its component Customs and Border Protection ("CBP") to release records improperly withheld from the public under the Freedom of Information Act ("FOIA"). Plaintiffs respectfully ask that this Court issue an order requiring CBP to release all records improperly withheld from the public. This cross motion is based on this notice of cross motion, the memorandum of points and authorities in support of this cross motion, the declaration of Marcia Hofmann and attached exhibits in support of this cross motion, and all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

In this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiffs seek agency records concerning Customs and Border Protection's policies and procedures on the questioning, search, and inspection of travelers entering or returning to the United States at ports of entry.

Plaintiffs' request for this information was prompted by an influx of complaints from individuals, including U.S. citizens, who reported lengthy, intrusive, and repeated screenings at the border by CBP officials. Declaration of Marcia Hofmann (hereafter "Hofmann Decl.") ¶ 3. More than 20 residents of Northern California alone had complained to Plaintiffs about such inspections, while national news media had also discussed such incidents occurring nationwide. Hofmann Decl. ¶ 3. Individuals reported being grilled by CBP officials on such subjects as their families,

religious practices and associations, political beliefs, volunteer activities, educational background, and previous travels.  Hofmann Decl. ¶ 4.  In addition, travelers reported that CBP agents examined highly personal items they were carrying, such as their reading material, personal papers, business cards collected from friends and colleagues, digital cameras, laptop computers, and cell phone directories, and sometimes made copies of this information.   Hofmann Decl. ¶ 5.   Individuals experiencing these inspections felt anxious, fearful, and helpless, particularly because they had little understanding of their legal rights, or CBP policies and practices, in this setting.   Hofmann Decl. ¶ 6.   Plaintiffs filed this lawsuit in order to bring greater transparency to the agency's practices and to be able to better advise individuals of their rights when faced with intrusive questioning and searches at the border.  Hofmann Decl. ¶ 7.

There is a strong public interest in disclosure of the information at issue in this case.  The filing of this lawsuit and the partial release of agency records have already received significant attention from the news media, blogs, and the public at large.  *See, e.g.*, Ellen Nakashima, *Clarity Sought on Electronics Searches,* Wash. Post, Feb. 7, 2008, at A1; Bob Egelko, *Homeland Security Sued for Not Divulging Info*, S.F. Chron., Feb. 8, 2008, at B4; *Suit: Airport Searches of Laptops, Other Devices Intrusive* (CNN American Morning News Broadcast, Feb. 11, 2008); Ellen Nakashima, *Expanded Powers to Search Travelers at Border Detailed*, Wash. Post, Sept. 23, 2008, at A2; and Bob Egelko, *More Leeway for Customs in Border Searches*, S.F. Chron., Sept. 24, 2008, at A6 (Hofmann Decl. Ex. 1).

DHS has unlawfully withheld responsive information from Plaintiffs, invoking Exemptions 2, 5, and 7(E) of the FOIA.  An order compelling the timely processing and production of the withheld records is critical because the information requested is directly relevant to understanding CBP's screening policies and procedures affecting the rights of travelers, including U.S. citizens. Plaintiffs respectfully requests entry of an order compelling DHS to process and disclose the withheld records immediately.

-2 -
Opp. to Def.'s Mot. for Summ. J.;
Not. of Cross Mot. and Cross Mot. for Summ. J.; Mem. in Supp.
of Cross Mot. for Summ. J.

## II.  STATEMENT OF FACTS

On October 31, 2007, ALC and EFF faxed and sent via postal mail a letter to CBP pursuant to the FOIA requesting disclosure of the following records generated from September 11, 2001 to the present:

- Policies and procedures on the questioning of travelers, specifically as follows:

  - Policies and procedures on the questioning of travelers regarding political views, religious practices, and other activities potentially covered by the First Amendment;

  - Policies and procedures for responding to a traveler's refusal to answer questions;

  - Policies and procedures for permitting a traveler to access legal counsel or invoke a right to remain silent during inspection at the border; and

- Policies and procedures on inspections and searches of travelers' property, specifically as follows:

  - Policies and procedures on the photocopying, reproduction, and retention of written materials obtained through border searches, including documents that CBP officers have found not to violate the law;

  - Policies and procedures on conducting searches and duplicating files from laptop computers, MP3 players, digital cameras, cell phones, and other electronic devices;

  - Copies of two 1986 Customs Directives, *Review, Copying and Seizure of Documents* (Customs Directive 3300-04) and *Restrictions on Importation of Seditious Matter* (Customs Directive 2210-01), and any amendments or revisions to these materials;

  - Policies and procedures on the protection of confidential information in travelers' possession, such as information covered by trade secrets, attorney-client privilege, health privacy laws, or other legal protections.

Letter from Shirin Sinnar, Staff Attorney, Asian Law Caucus, and Marcia Hofmann, Staff Attorney, Electronic Frontier Foundation, to U.S. Customs and Border Protection, Oct. 31, 2007 (Ex. B to Declaration of Shari Suzuki in Support of Defendant's Motion for Summary Judgment

1  (hereafter "Suzuki Decl.")) (Dkt. No. 19-1.)

2       In a letter postmarked December 26, 2007, CBP acknowledged receipt of the Plaintiffs'

3  request and stated that the agency would "act with all due diligence to process this request as soon

4  as possible." Letter from Mark Hanson, Acting Director of the FOIA Division, Office of

5  International Trade, Customs and Border Protection, to Shirin Sinnar, Staff Attorney, Asian Law

6  Caucus, postmarked Dec. 26, 2007 (Suzuki Decl. Ex. C).

7       When CBP failed to process the request within 20 working days as required by the FOIA,

8  Plaintiffs initiated this lawsuit on February 7, 2008, seeking an order to compel DHS to process the

9  requested records. (Dkt. No. 1.) As a result of an agreement reached by the parties, DHS made an

10 interim release of responsive records on June 26, 2008, and a final release of responsive records on

11 July 30, 2008. Letter from Shari Suzuki, Chief, FOIA Appeals, Policy & Litigation Branch,

12 Customs and Border Protection, to Shirin Sinnar, Staff Attorney, Asian Law Caucus, June 26,

13 2008, and Letter from Shari Suzuki, Chief, FOIA Appeals, Policy & Litigation Branch, Customs

14 and Border Protection, to Shirin Sinnar, Staff Attorney, Asian Law Caucus, July 30, 2008 (Suzuki

15 Decl. Exs. D & E). Of the 689 pages processed, however, CBP withheld 337 in part or full under 5

16 U.S.C. § 552(b)(2), (b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). *See* Suzuki Decl. Exs. D & E.

17      Plaintiffs have agreed to significantly narrow the material still disputed in this case. Letter

18 from Marcia Hofmann, Staff Attorney, Electronic Frontier Foundation, to John Coleman, Trial

19 Attorney, Federal Programs Branch, Civil Division, Department of Justice, Oct. 2, 2008 (Suzuki

20 Decl. Ex. F). Plaintiffs continue to challenge only exemptions made pursuant to 5 U.S.C. §

21 552(b)(2), (b)(5) and (b)(7)(E) in particular documents responsive to Plaintiffs' FOIA request,

22 which are reflected in the index DHS prepared pursuant to *Vaughn v. Rosen*, 523 F.2d 1136 (D.C.

23 Cir. 1975). *See* Suzuki Decl. Ex. F; DHS *Vaughn* index (Suzuki Decl. Ex. A.) Plaintiffs do not

24 challenge the adequacy of CBP's search, or the agency's designation of any material as non-

25 responsive to Plaintiffs' request. Suzuki Decl. Ex. F.

26

27

28

III.    **ARGUMENT**

A.    **The Freedom Of Information Act and the Standard of Review**

The Freedom of Information Act is intended to safeguard the American public's right to know "what their Government is up to." *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989). The central purpose of the statute is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). "[D]isclosure, not secrecy, is the dominant objective of the [FOIA]." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). The Supreme Court has stated that "[o]fficial information that sheds light on an agency's performance of its statutory duties falls squarely within [the] statutory purpose." *Reporters Comm.*, 489 U.S. at 773.

Unless "the requested material falls within one of these nine statutory exemptions, FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the general public." *NLRB,* 437 U.S. at 221 (1978); *Nat'l Wildlife Fed'n v. U.S. Forest Service*, 861 F.2d 1114, 1116 (9th Cir. 1988) (same). The exemptions "have been consistently given a narrow compass," and agency records that "do not fall within one of the exemptions are improperly withheld[.]" *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal quotation marks omitted).

"Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law." *Laroche v. SEC*, No. 05-4760 CW, 2006 U.S. Dist. LEXIS 75415, 2006 WL 2868972 at *1 (N.D. Cal. Oct. 6, 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)) (Hofmann Decl. Ex. 2). A court reviews the government's withholding of agency records *de novo*, and the government bears the burden of proving that a particular document falls within one of the nine narrow exemptions to the FOIA's broad presumption of disclosure. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755 ("Unlike the review of other agency action that must be upheld if supported by substantial evidence and not

-5-
Opp. to Def.'s Mot. for Summ. J.;
Not. of Cross Mot. and Cross Mot. for Summ. J.; Mem. in Supp.
of Cross Mot. for Summ. J.

1    arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action'

2    and directs the district courts to 'determine the matter de novo.'") (quoting 5 U.S.C. §

3    552(a)(4)(B)).  An agency may submit affidavits to satisfy its burden, but "the government may not

4    rely upon conclusory and generalized allegations of exemptions." *Kamman v. IRS*, 56 F.3d 46, 48

5    (9th Cir. 1995) (quoting *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1980)

6    (internal quotation marks omitted).

7    **B.    ALC and EFF Are Entitled to Summary Judgment Because DHS Has**
     **Improperly Withheld Agency Records**

8

9    As described in detail below, DHS has failed to satisfy its burden of proving that it has

10   released all non-exempt material in response to Plaintiffs' FOIA request.  As a result, the Court

11   should deny the government's motion for summary judgment and grant Plaintiffs' cross motion for

12   summary judgment, requiring DHS to release all material that it has improperly withheld under the

13   FOIA.

14   **1.    DHS Has Improperly Withheld Agency Records Pursuant to**
     **Exemptions 2 and 7(E)**

15

16   DHS has not met its burden of proving that withheld materials are exempt from disclosure

17   under Exemptions 2 and 7(E) because it has not established that disclosure of records withheld

18   under "high" 2 or 7(E) would risk circumvention of the law, or that records withheld under "low" 2

19   have no significance to the public.

20   **(a)    Legal Standard Under Exemption 2**

21   Exemption 2 protects from disclosure records concerning matters that are "related solely to

22   the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2) . The Ninth Circuit

23   has applied this exemption to "law enforcement materials, the disclosure of which may risk

24   circumvention of agency regulation." *Hardy v. Bureau of Alcohol, Tobacco, & Firearms*, 631 F.2d

25   653, 656 (9th Cir. 1980).  In *Maricopa Audubon Soc'y v. U.S. Forest Service*, the Ninth Circuit

26   refused to exempt from disclosure information on the nesting sites of goshawks on forest land,

27   noting that that information did not enable lawbreakers to avoid the Forest Service's enforcement

28

efforts. 108 F.3d 1082, 1087 (9th Cir. 1997) ("*Maricopa I*").  Thus, DHS must establish that a risk of circumvention of CBP regulations applies to each of the records it seeks to withhold under "high 2."

The other branch of Exemption 2, known as "low 2," protects "predominantly internal documents that deal with trivial administrative matters[.]" *Schiller v. NLRB*, 964 F.2d 1207 (D.C. Cir. 1992).  "The general thrust of the exemption is simply to relieve agencies of the burden of assembling and maintaining for public inspection matter in which the public could not reasonably be expected to have an interest." *Rose,* 425 U.S. at 369-70.

### (b)   Legal Standard Under Exemption 7(E)

The threshold issue for a claim of Exemption 7(E) protection is whether the withheld documents are "records or information compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  Here, Plaintiffs do not challenge the designation of withheld records as information "compiled for law enforcement purposes."  DHS has not, however, met its burden of showing that Exemption 7(E) applies to the records in question.

Exemption 7(E) protects from disclosure law enforcement records that would disclose "techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

DHS wrongly contends that under the first clause of 7(E), records about law enforcement "techniques or procedures," are categorically protected, regardless of any showing of harm by the government.  Def. Mot. Summ. J. at 7.  In fact, this Court unequivocally requires the government to demonstrate that disclosure under either clause of 7(E) would risk circumvention of the law. *Feshbach v. SEC*, 5 F. Supp. 2d 774, 786 (N.D. Cal. 1997) ("To qualify for Exemption 7(E), the non-disclosing agency *must* demonstrate that the records, if disclosed, would risk circumvention of the law.") (emphasis added); *see also Gordon v. FBI*, 388 F. Supp. 2d 1028, 1035 (N.D. Cal. 2005) (to withhold records under 7(E), the government must show not only that they were compiled for a law enforcement purpose, but also that they "could reveal law enforcement techniques or

guidelines that, if disclosed, could reasonably be expected to risk circumvention of the law."). Relying on *Davin v. Dep't of Justice*, 60 F.3d 1043, 1064 (3rd Cir. 1995), *Feshbach* declined to distinguish between law enforcement records regarding techniques and procedures, which the government had argued did not require showing a risk of circumvention, from law enforcement guidelines. 5 F. Supp. 2d at 786 n.11. The Court granted summary judgment to securities broker-dealers when they opposed the government's 7(E) claim, ordering the Securities and Exchange Commission to release withheld records because the government failed to show that the disclosure of records revealing procedures and techniques of securities investigations would circumvent federal law. *Id.* at 787.[1]

Furthermore, Exemption 7(E) cannot be used to withhold information concerning "an investigative technique that is routine and generally known." *Rosenfeld v. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995). In *Rosenfeld*, the Ninth Circuit required the disclosure of records on a pretext phone call by an FBI agent, finding that it was an investigative technique generally well known to the public. Using the same rule, other courts have denied protection under Exemption 7(E) to records on law enforcement methods such as the interception of wire, oral, and electronic communications; "mail covers" and the use of post office boxes; and the planting of transponders on aircraft suspected of smuggling. *See respectively Pub. Employees for Envtl. Responsibility v. EPA*, 978 F. Supp. 955, 963 (D. Colo. 1997); *Dunaway v. Webster*, 519 F. Supp. 1059, 1083 (N.D. Cal. 1981); and *Hamilton v. Weise*, No. 95-1161, 1997 U.S. Dist. LEXIS 18900, at *30 (M.D. Fla. Oct. 1, 1997) (Hofmann Decl. Ex. 3).

### (c) DHS Has Failed to Demonstrate Risk of Circumvention, and So Can Withhold Material Under Neither "High 2" Nor Exemption 7(E)

DHS has not met its burden of establishing a risk of circumvention of the law under either Exemption "high 2" or 7(E). Under both exemptions, courts do not defer to the government's contention that disclosure would facilitate circumvention of the law, but require specific, non-

---

[1] Moreover, DHS has not actually stated which of the records withheld under 7(E) concern "techniques and procedures" for investigations rather than "guidelines." Without such a showing, DHS has failed to establish that the first clause of exemption 7(E) even applies to many of the records in question.

Opp. to Def.'s Mot. for Summ. J.;
Not. of Cross Mot. and Cross Mot. for Summ. J.; Mem. in Supp.
of Cross Mot. for Summ. J.

1  conclusory explanations of how the disclosure would enable individuals to evade the law.  Even

2  where law enforcement records pertain to national security, courts have scrutinized the

3  government's explanations to independently assess whether a real risk of circumvention has been

4  demonstrated.  In *Gordon v. FBI*, a case involving the "no-fly list" and other terrorist watchlists,

5  this Court ordered the FBI to disclose records describing the legal basis for detaining someone

6  whose name appears on a watch list because the agency had not adequately explained how the

7  information could be used to circumvent agency regulations.   388 F. Supp. 2d at 1036-37.

8  Likewise, in *Gerstein v. Dep't of Justice*, this Court rejected the government's contention that the

9  release of information on the use of Patriot Act delayed-notice search warrants by particular U.S.

10  attorneys would enable criminals to direct their activities toward vulnerable jurisdictions.  No. 03-

11  04893 RMW, 2005 U.S. Dist. LEXIS 41276, at **39-41 (N.D. Cal. Sept. 30, 2005) (finding that

12  the predictive value of the 60 warrants issued was minimal and that the government had not shown

13  that criminals feared the use of delayed-notice warrants) (Hofmann Decl. 4).

14        In addition, several district courts have denied CBP's claim under Exemptions "high 2" and

15  7(E) that circumvention of its regulations would result from disclosure.  *See, e.g., El Badrawi v.*

16  *Dep't of Homeland Security*, No. 07-372, 2008 U.S. Dist. LEXIS 76038, 2008 WL 4480363, at *21

17  (D. Conn. Sept. 30, 2008) (rejecting CBP's "boilerplate warnings about 'jeopardizing' databases

18  and 'revealing law enforcement procedures'") (Hofmann Decl. 5); *Shearson v. Dep't of Homeland*

19  *Security*, No. 06-1478, 2007 U.S. Dist. LEXIS 16902, 2007 WL 764026, at *6 (N.D. Ohio Mar. 9,

20  2007), *reconsideration denied*, No. 06-1478, 2008 U.S. Dist. LEXIS 27706, 2008 WL 928487

21  (N.D. Ohio Apr. 4, 2008)  (requiring CBP to disclose in part records regarding the border stop of

22  an individual flagged as a "lookout" while attempting to enter the United States) (Hofmann Decl.

23  6); *Poulsen v. Customs and Border Protection*, No. 06-1743 SI, 2006 U.S. Dist. LEXIS 73670,

24  2006 WL 2788239, at *7 (N.D. Cal. Sept. 26, 2006) (requiring CBP to release records related to a

25  CBP computer failure withheld under "high" 2 because government failed to show how disclosure

26  would render the CBP computer system vulnerable) (Hofmann Decl. 7); *Hamilton*, 1997 U.S. Dist.

27  LEXIS 18900 at **29-33 (rejecting U.S. Customs Service claim of 7(E) to exempt information on

28

techniques including the planting of transponders on aircraft and the use of drug-sniffing dogs to detect narcotics smuggling).

Here, the government has not met its burden of showing that disclosure of each withheld record would risk circumvention of the law. For example, CBP redacted information in a number of documents that identified watchlists or databases that are accessed by border agents in questioning or searching travelers seeking to enter the United States.[2] Yet the government does not show how revealing the existence or names of such watchlists or databases would enable individuals to circumvent the law. First, the use of watchlists to screen travelers is by now a matter of common knowledge (and notoriety), and therefore falls within the "routine technique" exception to 7(E). *See Rosenfeld*, 57 F.3d at 815. Numerous news articles[3] and the agency's own publications[4] have reported the agency's screening of arriving travelers against the terrorist watchlist and CBP databases.

Furthermore, the Privacy Act of 1974 requires that the names of such databases be made

---

[2] *See Vaughn* index descriptions of documents 2 (Bates Nos. 160-175), 4 (Bates Nos. 238-242), 5 (Bates Nos. 243-245), 8 (Bates Nos. 284-285), 9 (Bates Nos. 498-513), 10 (Bates Nos. 514-515) 13 (Bates No. 521), 14 (Bates Nos. 549-550), 17 (Bates Nos. 556-574), 18 (Bates Nos. 575-580), 20 (Bates Nos. 598-600), 22 (Bates Nos. 602-603), 23 (Bates Nos. 604-605), 24 (Bates Nos. 606-607), 25 (Bates Nos. 608-618), 28 (Bates No. 624), 29 (Bates Nos. 625-627), 31 (Bates Nos. 631-633), 32 (Bates Nos. 634-647), 34 (Bates Nos. 650-653), 35 (Bates Nos. 654-658), 36 (Bates Nos. 659-661), 37 (Bates Nos. 662-670), 39 (Bates Nos. 676-678), 41 (Bates Nos. 681-682), and 43 (Bates Nos. 687-689) at Suzuki Decl Ex. A. The documents that have been redacted only in part are available at Hofmann Decl. Ex. 8.

[3] For a small sample of national news coverage of CBP's use of terrorist watchlists, see Ellen Nakashima, T*error Suspect List Yields Few Arrests; 20,000 Detentions in '06 Rile Critics*, Wash. Post, Aug. 25, 2007, at A1, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2007/08/24/AR2007082402256.html; Michael J. Sniffen & Eileen Sullivan, *Questions and Answers on Terrorist List*, Associated Press, Nov. 9, 2007, *available at* http://abcnews.go.com/Politics/wireStory?id=3841983; *Terrorist Suspects, Drugs Seized at Ports*, Wash. Times, Oct. 11, 2007, *available at* http://www.washingtontimes.com/news/2007/oct/11/terrorist-suspects-drugs-seized-at-ports; CBS News, *U.S. Citizens Question Terror Watch Lists* (CBS News Broadcast, Dec. 8, 2007), *available at* http://www.cbsnews.com/stories/2007/12/08/eveningnews/main3595024.shtml.

[4] *See*, *e.g.*, U.S. DEP'T OF HOMELAND SEC., OFFICE OF THE INSPECTOR GEN., OIG-08-29, THE DHS PROCESS FOR NOMINATING INDIVIDUALS TO THE CONSOLIDATED TERRORIST WATCHLIST 4-5 (Feb. 2008) (providing a detailed public description of how CBP officers inspect individuals by querying the Treasury Enforcement Communications System (TECS), which draws on watchlist records provided by the Terrorist Screening Center from the Terrorist Identities Datamart Environment (TIDE) repository).

-10-

public.  The statute directs agencies that maintain a system of records to, *inter alia*, give the public notice of the existence of the database by publishing "the *name* and location of the system" in the Federal Register.  5 U.S.C. § 552a(e)(4)(A) (emphasis added).[5]  DHS has followed this requirement with respect to similar CBP systems of records used to screen potential terrorists.[6]  The agency's refusal to release this basic information raises the troubling possibility that DHS has failed to make the existence of the databases known to the public, thus failing to comply with the Privacy Act.  If, on the other hand, DHS has published the names of these databases as legally required, the agency has no reason to withhold the same information from Plaintiffs under the FOIA.

Second, the disclosure that CBP uses a particular watchlist would not create a risk of circumvention of the law because the watchlists themselves are secret; to the contrary, knowledge of the watchlists' use does not help organizations or individuals evade the law because they do not know who is listed in the first place.  *Cf. Gordon*, 388 F. Supp. 2d at 1037 (noting that, by contrast, knowledge of whether a particular person is on the watch list "would enable criminal organizations to circumvent the purpose of the watchlists by determining in advance which of their members may be questioned.")

---

[5] While the Privacy Act does permit an agency to exempt a system of records from certain requirements of the law under particular circumstances, *see* 5 U.S.C. § 552a(j) & (k), an agency must always give the public notice of the existence of a system of records.

[6] *See*, *e.g.*, Notice of Privacy Act System of Records, 72 Fed. Reg. 48,349 (Aug. 23, 2007) (providing notice of the establishment of a CBP system of records to collect biographical information on passenger and crew members who arrive in, depart from, or transit through the United States on a covered air or vessel carrier); Notice of Privacy Act System of Records, 72 Fed. Reg. 43,650, 43,654 (Aug. 6, 2007) (giving notice of the Automated Targeting System, a program that, *inter alia*, "perform[s] targeting of individuals, including passengers and crew, focusing CBP resources by identifying persons who may pose a risk to border security, may be a terrorist or suspected terrorist, or may otherwise be engaged in activity in violation of U.S. law"); Notice of Privacy Act System of Records, 66 Fed. Reg. 52, 984 (Oct. 11, 2001) (giving notice of establishment or changes in more than 90 systems of records maintained by Customs, including TECS, which contains information about violators or suspected violators of customs laws). It is also worth noting that the FBI has published Federal Register notices concerning the system of records upon which the consolidated terrorist watch list is based. *See* Notice to Establish System of Records, 70 Fed. Reg. 43,715 (July 28, 2005); Notice to Amend System of Records, 72 Fed. Reg. 47,073 (Aug. 22, 2007).

-11-

DHS's contention that disclosure would enable unauthorized parties to access government databases is unsupported: the government fails to show how the names of databases alone, without pathnames or additional information, facilitates improper access. Furthermore, while DHS refuses to release the name of a local database developed by the Tucson CBP Field Office under "high 2," it appears that the government simultaneously claims "low 2" protection for the same database, explaining that the database is no longer in use and therefore of no interest to the public.[7]  Def. Mot. Summ. J. at 11-12. It makes little sense that revealing the name of a defunct database could enable circumvention of the law.

DHS also withheld information from numerous documents regarding the "specific topics for questioning" individuals attempting to enter the United States.[8]  It is important to note that Plaintiffs did not request a comprehensive list of questions that CBP agents pose to travelers, but only records pertaining to "policies and procedures on the questioning of travelers regarding political views, religious practices, and other activities potentially covered by the First Amendment." Suzuki Decl. Ex. B. Presumably questions regarding political views, religious practices, and other First Amendment activities represent only a limited facet of CBP investigations, in comparison with questioning related to whether a person poses a threat to the United States. DHS does not address how public knowledge of such a limited segment of interview topics could enable individuals to circumvent CBP's inspections. Moreover, the

---

[7] For example, compare the description of the database referenced in Bates No. 549 ("[Redacted] was developed at the Tucson Field Office to improve tracking of persons in interest (POIs) and suspected terrorists) with the description of the database in Bates No. 575 ("In the months following the 9/11 attacks, the Field Analysis Unit of the Tucson Field Office implemented procedures to refine the targeting and interviewing of Persons of Interest (POIs) and the collection of the data from those interviews in a database [redacted].").  Hofmann Decl. Ex. 8. The first redaction was made pursuant to "high 2" because release of the name of the database "could lead to circumvention of CBP law enforcement efforts or facilitate improper access to the database[] for purposes of frustrating CBP law enforcement functions." *Vaughn* index description of document 14. The second redaction was made pursuant to "low 2" because the database is "no longer in use." *Vaughn* index description of document 18.

[8] See *Vaughn* index descriptions of documents 1 (Bates Nos. 135-159), 2 (Bates Nos. 160-175), 5 (Bates Nos. 243-245), 6 (Bates Nos. 246-248), 7 (Bates Nos. 269-282), 9 (Bates Nos. 498-513), 12 (Bates Nos. 517-520), 15 (Bates Nos. 551-552), 16 (Bates Nos. 553-555), and 18 (Bates Nos. 575-580). Hofmann Ex. 8.

-12-

maintenance of secret CBP rules on questioning travelers on politics, religion, and other constitutionally protected activities comes close to the retention of "secret law" at which FOIA takes aim. *Cf. Crooker v. Bureau of Alcohol, Tobacco, & Firearms*, 670 F.2d 1051, 1073 (D.C. Cir. 1981).

CBP's bare contention that records disclosing procedures for coordination with other law enforcement agencies are exempt because of the risk of circumvention is similarly unsupported.[9] In *Shearson*, the court rejected CBP's claim that Exemption 7(E) justified the withholding of information on agencies contacted by CBP when an individual is detained at the border, finding that that information alone would not assist an individual in evading the law.  2007 WL 764026, at **21-22.  Likewise, in *Hamilton* the court ordered the U.S. Customs Service to disclose records on the coordination of investigations by different law enforcement agencies to a pilot whose aircraft had been investigated by the agency for narcotics smuggling.  1997 U.S. Dist. LEXIS 18900 at *32.

In addition, CBP has not met its burden of justifying the redaction of information in records concerning an "Interim Guidance for Border Search/Examination of Documents, Paper and Electronic Information" issued to CBP field offices in July 2007.[10]  That policy was superseded by a border search policy publicly issued by the agency in July 2008.  U.S. Customs and Border Protection, Policy Regarding Border Search of Information (July 16, 2008).[11]  DHS does not explain how complete disclosure of the outdated policy would enable circumvention of the law, now that the policy has been replaced and the new version has been provided in full to the public.

---

[9] See documents 4 (Bates Nos. 238-242), 10 (Bates Nos. 514-515), 13 (Bates No. 521), 14 (Bates Nos. 549-550), 17 (Bates Nos. 556-574), 39 (Bates Nos. 676-678), 40 (Bates Nos. 679-680), and 42 (Bates Nos. 683-686). Hofmann Decl. Ex. 8.

[10] See documents 20 (Bates Nos. 598-600), 22 (Bates Nos. 602-603), 23 (Bates Nos. 604-605), 25 (Bates Nos. 608-618), 27 (Bates Nos. 621-623), and 29 (Bates Nos. 625-627). Hofmann Decl. Ex. 8.

[11] *Available at* http://www.cbp.gov/linkhandler/cgov/travel/admissibility/search_authority.ctt/. search_authority.pdf.

Opp. to Def.'s Mot. for Summ. J.;
Not. of Cross Mot. and Cross Mot. for Summ. J.; Mem. in Supp.
of Cross Mot. for Summ. J.

1

2

        **(d)**       **DHS Has Failed to Show That the Material Withheld Material Under "Low 2" Has No Significance to the Public**

3          Finally, DHS has improperly invoked the "low 2" exemption to withhold the names of two

4  CBP databases in a memorandum.  *See Vaughn* index description of document 18; Hofmann Decl.

5  Ex. 8 (Bates Nos. 575-580); Suzuki Decl. ¶ 20.  DHS claims that the name of the database redacted

6  on Bates No. 575 "would reveal the location of information stored on an internal network and

7  concerns a matter that is purely internal and is utilized by CBP to assist in the access, use and

8  control of CBP information."  Suzuki Decl. ¶ 20.  A review of the agency record on which the

9  information is redacted, however, shows that the database contains information from interviews of

10  "persons of interest" or "suspected terrorists."  Hofmann Decl. Ex. 8 (Bates No. 575).  Further, the

11  database mentioned on Bates No. 578, which CBP concedes is no longer in use, Suzuki Decl. ¶ 20,

12  was apparently used to screen suspected terrorists entering or leaving the United States, contained

13  "photos/documents," and was "checked for subjects at airports."  Hofmann Decl. Ex. 8.

14          Despite DHS's claim that the names of these databases are exempt under "low 2" because

15  one "is used exclusively for the purpose of storing, locating and retrieving information on the CBP

16  network" and the other is "obsolete," these are precisely the types of databases that Congress has

17  determined to be matters of public significance.  As explained above, the Privacy Act requires

18  agencies to provide public notice of the existence of a system of records by publishing "the name

19  and location of the system" in the Federal Register.  5 U.S.C. § 552a(e)(4)(A).  The names of the

20  databases at issue here can hardly be considered so insignificant as to fall within the ambit of "low

21  2" when Congress has required the same information to be made public.

22          DHS relies upon case law that does not support its redaction of database names. In both

23  *NYC Apparel FZE v. Customs and Border Protection* and *Changzhou Laosan Group v. Customs*

24  *and Border Protection Bureau*, CBP's "low 2" redactions were made to protect internal

25  information related to computer systems that were explicitly named in CBP's *Vaughn* indices—the

26  Automated Commercial System (ACS) and Seized Asset and Case Tracking System (SEACATS).

27  *See Vaughn* Indices, Declaration of Joanne Roman Stump Exs. A and B, *NYC Apparel FZE v.*

28

-14-

*Customs and Border Protection*, 484 F. Supp. 2d 77 (D.D.C. 2007) (Dkt. No. 10-2) (Hofmann Decl. Ex. 9); *Vaughn* Indices, Declaration of Joanne Roman Stump Exs. A and B, *Changzhou Laosan Group v. Customs and Border Protection Bureau*, No. 04-1919, 2005 U.S. Dist. LEXIS 7075, 2005 WL 913268 (D.D.C. April 20, 2005)  (Dkt. Nos. 9-3 and 9-4) (Hofmann Decl. Ex. 10).[12]  CBP did not redact the names of the databases themselves under "low 2," as DHS attempts to do here.

Moreover, the *Vaughn* declaration in *Poulsen* does not reflect that CBP sought to redact the names of databases in that case. *See* Declaration of Shari Suzuki in Opposition to Mot. for Summ. J., *Poulsen*, 2006 WL 2788239 (N.D. Cal. Sept. 26, 2005) (Dkt. No. 21-1) (hereafter "*Poulsen* Suzuki Decl.") (Hofmann Decl Ex. 12).  Judge Illston's opinion in *Poulsen* includes two references to "names or other specific identifying information for databases or patches installed" that she determined were properly redacted under Exemption 2 in two separate documents.[13]  *Poulsen*, 2006 WL 2788239, at *8.  Yet the phrase "names . . . of databases" actually appears to refer to certain data that CBP described to the Court as "unique personal identifiers, workstation names, unique computer security or access codes and security response actions taken by CBP (generally described in technical terms or codes)" and "unique personal identifiers, unique computer access or security codes, response codes, site codes and security response actions taken by CBP (generally described in technical terms or codes.)" Compare *Poulsen* Suzuki Decl. ¶¶ 15 &  17 and *Poulsen*, 2006 WL 2788239, at *8. As such, *Poulsen* concerned internal data related to CBP's operation of an agency computer system and the security of that system.  The opinion does not support the withholding of the names of databases like those at issue here, which contain personal information about members of the public and are likely subject to the requirements of the Privacy Act.

---

[12] The opinion in *Changzhou Laosan Group v. Customs and Border Protection Bureau*, No. 04-1919, 2005 U.S. Dist. LEXIS 7075, 2005 WL 913268 (D.D.C. April 20, 2005) is attached to the Declaration of Marcia Hofmann as Exhibit 11.

[13] Despite DHS's characterization of *Poulsen* as holding that "names or other specific identifying information for databases" are properly withheld under "low 2,"  Mot. Summ. J. at 12, the opinion does not specify whether Judge Illston determined that the information was properly redacted under "high 2" or "low 2."

-15 -

For these reasons, Plaintiffs are entitled to summary judgment with respect to records that CBP has failed to produce under Exemptions 2 and 7(E).

### 2.   DHS Has Improperly Withheld Agency Records Under Exemption 5

The FOIA contains a narrow exemption for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5).   DHS has invoked the deliberative process privilege to shield portions of two records from disclosure.   Def. Mot. Summ. J. at 12-13; Suzuki Decl. ¶¶ 23-27. However, "[t]o qualify for exemption 5 under the 'deliberative process' privilege, a document must be *both* (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'"   *Nat'l Wildlife Fed'n*, 861 F.2d at 1117 (quoting *Jordan v. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)) (emphasis in original); *see also Maricopa Audubon Soc'y v. U.S. Forest Service*, 108 F.3d 1089, 1092 (9th Cir. 1997) ("*Maricopa II*"); *Assembly of the State of Cal. v. Assembly Comm. on Elections*, 968 F.2d 916, 920 (9th Cir. 1992).   As the Ninth Circuit has explained, "Exemption 5 cases contrast agency documents leading to a decision with documents explaining or interpreting a decision after the fact.   Because an agency's interpretations of its decisions often become the 'working law' of the agency, documents deemed 'postdecisional' do not enjoy the protection of the deliberative process privilege."   *Assembly of the State of Cal.*, 968 F.2d at 920 (citing *NLRB v. Sears*, 421 U.S. 132, 153 (1975)).   The agency "bears the burden of establishing the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process."   *United States v. Rozet*, 183 F.R.D. 662, 666 (N.D. Cal. 1998) (citing *Strang v. Collyer*, 710 F. Supp. 9, 11 (D.D.C. 1989), *aff'd*, 899 F.2d 1268 (D.C. Cir. 1990) (internal quotation marks omitted).

DHS has withheld material under the deliberative process privilege in two separate documents.   First, DHS has redacted handwritten notes made by a CBP employee regarding an

interim policy.[14]  *See* Interim Procedure for Border Search/Examination of Documents, Papers, and Electronic Information [Redacted], *Vaughn* Index document 29; Hofmann Decl. Ex. 8 (Bates Nos. 625-626); Suzuki Decl. ¶¶ 25-26.  There is no indication, however, that the content of these notes is predecisional—in fact, the government fails to point to any specific decision to which the notes relate.   DHS's vague claim that the notes were intended "to assist in later deliberations" is insufficient to justify an Exemption 5 withholding. Suzuki Decl. ¶ 26.  The Ninth Circuit has unequivocally rejected the argument that "a continuing process of agency self-examination is enough to render a document 'predecisional' and h[e]ld, instead, that the agency must identify a specific decision to which the document is predecisional." *Maricopa II*, 108 F.3d at 1094; *see also Assembly of the State of Cal.*, 968 F.2d at 921 ("any memorandum always will be 'predecisional' if referenced to a decision that possibly may be made at some undisclosed point in the future."); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) ("[c]haracterizing these documents as 'predecisional' simply because they play into an ongoing audit process would be a serious warping of the meaning of the word.").  As such, DHS has improperly withheld the notes under the deliberative process privilege.

DHS has also invoked the deliberative process privilege to withhold a portion of a completely redacted email regarding a "conference call."   *See Vaughn* index description of Document 40 (Bates No. 679-680).  According to DHS, the information withheld under Exemption 5 "reflects internal agency deliberations about the possibility of drafting a standard operating

---

[14] The government makes much of the fact that the notes are handwritten, Def. Mot. Summ. J. at 13-14, but handwritten notes are not automatically exempt from public disclosure merely because of their form.  As one court has pointed out, "[h]andwritten notes do not qualify for protection under the deliberative process privilege simply because they are handwritten.  Handwritten notes that do not reflect the preliminary thoughts of the agency decisionmaker or other agency personnel do not warrant Exemption 5 protection." *Electronic Privacy Information Center v. Dep't of Homeland Security*, 384 F. Supp. 2d 100, 113 n.18 (D.D.C. 2005) (internal citation omitted). *See also Azon v. Long Island Railroad*, Nos. 00-6031 (HB) & 00-6032 (HB), 2001 U.S. Dist. LEXIS 22154, 2001 WL 1658219, at *2 (S.D.N.Y. Dec. 26, 2001) (Hofmann Ex. 13) (rejecting an agency's withholding of handwritten notes in the margins of a document because they were "almost exclusively devoted to clarifying the facts underlying [an] internal investigation" and "patently not 'opinions' or 'recommendations.'").  The fact that information is handwritten makes it neither deliberative nor predecisional; the *content* of the notes must satisfy those criteria for the information to fall within the deliberative process privilege.

1   procedure."  Suzuki Decl. ¶ 27.  However, "even if a document is predecisional at the time it is

2   prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an

3   issue or is used by the agency in its dealings with the public." *Rozet*, 183 F.R.D. at 666 (citing

4   *Coastal States*, 617 F.2d at 866).  DHS does not provide enough information in its *Vaughn* index or

5   accompanying affidavit to determine whether the agency deliberations reflected in the email were

6   ultimately adopted by the agency as its official position on the standard operating procedure, or if

7   the deliberations were ultimately used by CBP in its dealings with the public.  As such, CBP has

8   failed to satisfy its burden and cannot sustain its invocation of Exemption 5.

9                     **3.**    **DHS Has Failed to Segregate Exempt Materials From Non-Exempt
                                 Material as the FOIA Requires**
10

11           The FOIA explicitly requires that "[a]ny reasonably segregable potion of a record shall be

12   provided to any person requesting such record after deletion of the portions which are exempt[.]"  5

13   U.S.C. § 552(b); *see also Church of Scientology of Cal.*, 611 F.2d at 744 ("it is error for a district

14   court to simply approve the withholding of an entire document without entering a finding on

15   segregability, or the lack thereof.")  The duty to segregate extends to material withheld under any

16   of the FOIA's nine exemptions. *Church of Scientology of Cal.*, 611 F.2d at 744 (the doctrine of

17   segregability applies to all FOIA exemptions).

18           "In the Ninth Circuit, the district court must review the agency's segregability decisions on

19   a document-by-document basis."  *NDRC v. Dep't of Defense*, 388 F. Supp. 2d 1086, 1096 (C.D.

20   Cal. 2005) (citing *Wiener v. FBI*, 943 F.2d 972, 988 (9th Cir. 1991)).  Furthermore, to satisfy its

21   burden, the agency must "describe what proportion of the information in a document is non-exempt

22   and how that material is dispersed throughout the document." *Mead Data Cent. v. Dep't of the Air

23   Force*, 566 F.2d 242, 261 (D.C. Cir. 1977); *see also NDRC*, 388 F. Supp. 2d at 1105 (finding an

24   agency declaration inadequate on segregability grounds when it stated merely that "none of the

25   withheld documents contain reasonably segregable information that is not exempt.")

26           Here, DHS has failed to meet its burden of segregating all non-exempt material from

27   exempt information.  DHS provides no information about segregability in its *Vaughn* index, but

28

1  instead declares that "[a]ll information withheld is exempt from disclosure pursuant to a FOIA

2  exemption or is not reasonably segregable because it is so intertwined with protected material that

3  segregation is not possible or its release would have revealed the underlying material."   Suzuki

4  Decl. ¶¶ 31-32.  Such sweeping justifications fall far short of the rule in this Court.  As such, DHS

5  has failed to carry its segregability burden.

6  **IV.     CONCLUSION**

7       For the foregoing reasons, DHS's motion for summary judgment should be denied, and

8  Plaintiffs' cross motion for summary judgment should be granted.

9  DATED:  October 27, 2008

10                                          */s/ Marcia Hofmann*
                                            Marcia Hofmann, Esq.
11                                          ELECTRONIC FRONTIER FOUNDATION
                                            454 Shotwell Street
12                                          San Francisco, CA  94110
                                            Telephone:  (415) 436-9333
13                                          Facsimile:  (415) 436-9993

14                                          Shirin Sinnar, Esq.
                                   .        ASIAN LAW CAUCUS
15                                          939 Market St., Suite 201
                                            San Francisco, CA 94103
16                                          Telephone: (415) 896-1701
                                            Facsimile: (415) 896-1702
17
18                                          Attorneys for Plaintiffs
                                            ASIAN LAW CAUCUS AND ELECTRONIC
19                                          FRONTIER FOUNDATION

20

21

22

23

24

25

26

27

28
                                        -19-