GREGORY G. KATSAS
Assistant Attorney General
JOSEPH P. RUSSONIELLO
United States Attorney
JOHN R. TYLER
Assistant Director, Federal Programs Branch
JOHN R. COLEMAN (Va. Bar # 70908)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6118
Washington, D.C. 20530
Telephone: (202) 514-4505
Facsimile: (202) 616-8460
John.Coleman3@usdoj.gov

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| ASIAN LAW CAUCUS AND ELECTRONIC FRONTIER FOUNDATION )<br><br>Plaintiffs, )<br><br>v. )<br><br>DEPARTMENT OF HOMELAND SECURITY )<br><br>Defendant. ) | Civil Action No. 3:08-0842 CW<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>**AND**<br><br>**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   December 4, 2008<br>Time:  2:00 p.m. |

1

**TABLE OF CONTENTS**

2

3    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5         A.    Defendant Properly Withheld Agency Records Pursuant to Exemptions

6               2 and 7(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

7               1.    Defendant Has Properly Withheld Agency Records Pursuant to

8                     Exemptions 2 (High) and 7(E) Because Release of Such Records Risks

9                     Circumvention of Agency Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

10              2.    Law Enforcement Techniques and Procedures are Categorically

11                    Exempt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

12              3.    Defendant Properly Withheld Agency Records Pursuant to

13                    Exemption 2 (Low) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

14       B.    Defendant Properly Withheld Agency Records Pursuant to Exemption 5 . . . . . 15

15       C.    Defendant Has Released All Reasonably Segregable Portions of

16             Responsive Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

17    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**PAGE(S)**

3

**CASES**

4

*Am. Civil Liberties Union v. Dep't of Defense*,
   543 F.3d 59 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

5

*Assembly of the State of Cal. v. U.S. Dep't of Commerce*,
   968 F.2d 916 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6

7

*Berman v. C.I.A.*,
   501 F.3d 1136 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

8

*Boyd v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*,
   496 F.Supp.2d 167 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

9

10

*C.I.A. v. Sims*,
   471 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11

*Center for Nat. Sec. Studies v. U.S. Dep't of Justice*,
   331 F.3d 918 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

12

13

*Changzhou Laosan Group v. U.S. Customs & Border Prot.*,
   Case No. 04-cv-1919, 2005 WL 913268 (D.D.C. April 20, 2005) . . . . . . . . . . . . . . . 15

14

*Coastal Delivery Corp. v. U.S. Customs Serv.*,
   272 F. Supp. 2d 958 (C.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

15

16

*Coastal States Gas Corp. v. Dep't of Energy*,
   67 F.2d 854 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

17

*Cozen O'Connor v. Dep't of Treasury*,
   570 F. Supp. 2d 749 (E.D. Pa. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

18

19

*Crooker v. Bureau of Alcohol, Tobacco, & Firearms*,
   670 F.2d 1051 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 14

20

*Davin v. U.S. Dep't of Justice*,
   60 F.3d 1043 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

21

22

*Electronic Privacy Information Center v. Dep't of Homeland Sec.*,
   384 F. Supp. 2d 100 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

23

*Feshbach v. SEC*,
   5 F. Supp. 2d 774 (N. D. Cal. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

24

25

*Fisher v. Dep't of Justice*,
   772 F. Supp. 7 (D.D.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

26

27

28

*Gordon v. FBI,*
   388 F. Supp. 2d 1028 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Hamilton v. Weise,*
   Case No. 95-cv-1161, 1997 U.S. Dist. LEXIS 18900 (M.D. Fla. Oct. 1, 1997) . . . . . . . 9

*Judicial Watch v. Dep't of Commerce,*
   337 F. Supp. 2d 146 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*K & N Engineering, Inc. v. Bulat,*
   510 F.3d 1079 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Keys v. Dep't of Homeland Sec.,*
   510 F. Supp. 2d 121 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Klamath Siskiyou Wildlands Ctr. v. U.S. Dep't of the Interior,*
   Case No. 07-cv-325, 2007 WL 4180685 (D. Or. Nov. 21, 2007) . . . . . . . . . . . . . . . . . 17

*Krikorian v.Dep't of State,*
   984 F.2d 461 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lion Raisins, Inc. v. U.S. Dep't of Agric.,*
   354 F.3d 1072 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Maricopa Audubon Soc'y v. U.S. Forest Serv.,*
   108 F.3d 1082 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Moayedi v. U.S. Customs & Border Prot.,*
   510 F. Supp. 2d 73 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Morley v. C.I.A.,*
   508 F.3d 1108 (D.C. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*NRDC v. Dep't of Defense,*
   388 F. Supp. 2d 1086 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*NYC Apparel FZE v. U.S. Customs & Border Prot.,*
   484 F. Supp. 2d 77 (D.D.C. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Nat'l Sec. Archive v. CIA,*
   402 F. Supp. 2d 211 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*North v. Walsh,*
   881 F.2d 1088 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Platt v. Union Pac. R.R. Co.,*
   99 U.S. 48 (1878) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Poulsen v. U.S. Customs & Border Prot.,*
   Case No. 06-cv-1743, 2006 WL 2788239 (N.D. Cal. Sept. 26, 2006) . . . . . . . . . . . . 15

*Schiller v. N.L.R.B.,*

964 F.2d 1205 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Shearson v. Dep't of Homeland Sec.*,
   Case No. 06-cv-1478, 2007 WL 764026 (N.D. Ohio Mar. 9, 2007) . . . . . . . . . . . . . . . 9

*Tax Analysts v. I.R.S.*,
   294 F.3d 71 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Watkins*,
   278 F.3d 961 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wright v. Lubinko*,
   515 F.2d 260 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATUTES

Freedom of Information Reform Act of 1986, Pub. L. No. 99-570, Title I, § 1802(a), 100
   Stat. 3207-48 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

5 U.S.C. § 552 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

5 U.S.C. § 552a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 14

## RULES AND REGULATIONS

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

66 Fed. Reg. 52, 984 (Oct. 11, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

68 Fed. Reg. 69,412 (Dec. 12, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

68 Fed. Reg. 69,414 (Dec. 12, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

72 Fed. Reg. 43,650 (Aug. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

72 Fed. Reg. 48,349 (Aug. 23, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

73 Fed. Reg. 43,457 (July 25, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

73 Fed. Reg. 43,462 (July 25, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

73 Fed. Reg. 32,720 (June 10, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## OTHER AUTHORITY

S. Rep. No. 221, 98th Cong. 1st Sess. 25 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

1

**INTRODUCTION**

2       This case arises from plaintiffs' Freedom of Information Act (FOIA), 5 U.S.C. § 552,

3   request for records concerning United States Customs and Border Protection (CBP) policies and

4   procedures for the questioning and searching of individuals seeking to enter the United States.

5   Defendant has identified and produced all responsive, non-exempt records and moved for

6   summary judgment pursuant to Fed. R. Civ. P. 56.  In support of its motion, defendant has

7   provided a detailed declaration and *Vaughn* index describing the bases for the information it has

8   withheld pursuant to FOIA's exemptions, and demonstrating its compliance with FOIA's

9   requirement to provide all reasonably segregable information.  5 U.S.C. § 552(b).

10      Plaintiffs oppose defendant's motion for summary judgment and cross move for summary

11  judgment on their own behalf, arguing that defendant's publicly filed declaration and *Vaughn*

12  index fail to support defendant's redactions made pursuant to Exemptions 2, 5, and 7(E), 5

13  U.S.C. § 552(b)(2), (5), & 7(E).  Plaintiffs' arguments in support of their opposition and cross

14  motion cannot withstand scrutiny.  First, plaintiffs contend that, because general information

15  about CBP law enforcement procedures is already publicly available, specific operational details

16  about these procedures cannot be withheld under FOIA Exemptions 2 (high) and 7(E) because

17  the release of such information would purportedly not pose any risk of circumvention of the law.

18  Common sense, however, reveals the artifice in this argument.  For example, there is an obvious

19  difference between generally knowing that the state police utilize sobriety checkpoints, and

20  knowing when and where such sobriety checkpoints will be utilized.  The public's general

21  awareness of the former type of information might help deter drunk driving, but public

22  disclosure of the latter type of information will surely result in easy circumvention of the state

23  police's efforts by drunk drivers.  In exactly the same way, there is a clear difference between

24  knowing that CBP utilizes government watchlists or databases to guard our nations' borders and

25  knowing how and under what circumstances CBP utilizes government watchlists or databases.

26  The rest of plaintiffs' arguments likewise concern information that, if disclosed, would provide

27

28

1    those seeking to circumvent the law with specific details concerning CBP's operations, and are

2    therefore properly exempt.

3         Moreover, the redaction of this information is appropriate in any event because the

4    statutory text and legislative history of 5 U.S.C. § 552(b)(7)(E) demonstrate that defendant need

5    not show a risk of circumvention of the law in order to withhold from disclosure law

6    enforcement techniques and procedures.

7         The remainder of plaintiffs' arguments, which concern a relatively small amount of

8    information, are equally without merit.  For example, the location of information on an internal

9    network and the name of an obsolete database is purely internal information for which the public

10   has no genuine interest, and therefore this information is properly redacted pursuant to

11   Exemption 2 (low).  Likewise, plaintiffs' arguments with respect to the small amount of

12   information redacted under FOIA Exemption 5 pursuant to the deliberative process privilege

13   simply ignore the relevant portions of the declaration and *Vaughn* index demonstrating that this

14   small amount of information is both deliberative and pre-decisional.  Finally, the record before

15   the Court demonstrates that defendant has observed FOIA's command to release all reasonably

16   segregable information.  Accordingly, defendant respectfully requests that the Court grant

17   defendant's motion for summary judgment and deny plaintiffs' cross motion for summary

18   judgment.

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**A.   Defendant Properly Withheld Agency Records Pursuant to Exemptions 2 and 7(E)**

The *Vaughn* index[1] and supporting declaration attached to defendant's motion for summary judgment demonstrate that disclosure of the material withheld pursuant to Exemptions 2 (high) and 7(E) risks circumvention of the law.  Accordingly, under any understanding of the prevailing legal standard, defendant is entitled to judgment as a matter of law regarding its withholding of this material.  In the alternative, the Court may also uphold defendant's withholdings of law enforcement techniques and procedures pursuant to Exemption 7(E) without finding a risk of circumvention, because such information is categorically exempt.  Finally, defendant's redaction of the name of a database that was formerly used by the Tucson Field Office and the location of information on an internal network pursuant to Exemption 2 (low) is appropriate because it is purely internal and the public could have no legitimate interest in this information.

> *1.   Defendant Has Properly Withheld Agency Records Pursuant to Exemptions 2 (High) and 7(E) Because Release of Such Records Risks Circumvention of Agency Law*

Plaintiffs concede that the material withheld pursuant to Exemptions 2 (high) and 7(E) was "compiled for law enforcement purposes,"[2] and therefore base their cross motion for summary judgment on the contention that defendant has failed to adequately explain how disclosure of four categories of information risks circumvention of the law.  The four categories of information consist of: (1) the names of databases and information relating to the use of government watchlists; (2) "specific topics for questioning" individuals seeking to enter the United States; (3) information relating to CBP's coordination with other law enforcement

---

[1]  *See* Exhibit A to Declaration of Shari Suzuki (hereinafter "*Vaughn* index") (Document 5).

[2]  *See* Plaintiffs' Memorandum in Opposition to Defendant's Motion for Summary Judgment and Memorandum of Points and Authorities in Support of Cross Motion for Summary Judgment ("Pl. Mem.") at 7.

Civil Action No. 4:08-0842 (CW)
Def. Opp. to Pl. Mot. Summ. J. & Reply in Supp. Def. Mot. Summ. J.                    3

agencies; and (4) the redaction of information in records concerning an "Interim Guidance for Border Search/Examination of Documents, Paper and Electronic Information." *See* Pl. Mem. at 10-13.  For the reasons that follow, plaintiffs' contentions with respect to each of these categories of information are meritless.  Even assuming such a requirement exists for all records withheld pursuant to Exemptions 2 (high) and 7(E), *but see* Part A.2, defendant's *Vaughn* index has provided as "much detail as possible on the public record" without "reveal[ing] the very information the government claims is exempt from disclosure" to demonstrate the risk of circumvention of the law that would result from the release of this information.  *Lion Raisins, Inc. v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1083-84 (9th Cir. 2004).  Accordingly, defendant's withholdings are proper and defendant is entitled to summary judgment.

       **a.**      Plaintiffs challenge defendant's redaction of what they inaccurately describe as "information in a number of documents that identified watchlists or databases that are accessed by border agents in questioning or searching travelers seeking to enter the United States."  Pl. Mem. at 10 & n.2.  Plaintiffs misleadingly group this information together and suggest that it only concerns the proper names of databases and government watchlists.  In fact, plaintiffs identify documents that concern several different types of information: "names of specific database reports,"[3] "names of specific database modules,"[4] "information related to the operation of government watchlists,"[5] and "names of databases."[6]  Plaintiffs' erroneous grouping of this disparate information in the category "names of databases" Pl. Mem. at 10, is central to their argument that because the Privacy Act requires agencies to publish "the name and location" of any "system of records" in the Federal Register, it allegedly follows that disclosure of the

---

[3] *See Vaughn* Index (Document 5).

[4] *See Vaughn* Index (Document 28, 35, 36, 37)

[5] *See Vaughn* Index (Documents 20, 22, 23, 25, 29, 31, 32, 34, 43).

[6] *See Vaughn* Index (Documents 2, 4, 8, 9, 10, 13, 14, 17, 18, 24, 39, 41)

1   redacted information could not risk circumvention of the law.  Pl. Mem. at 10-11 (citing 5 U.S.C.

2   § 552a(e)(4)(A)).[7]

3          This argument is without merit for several reasons.  First, because the Privacy Act does

4   not require that the "names of specific database reports," the "names of specific database

5   modules," or "information related to the operation of government watchlists" be published in the

6   Federal Register, the underlying basis for plaintiffs' argument fails at the outset.  Furthermore,

7   with respect to the first two types of information, disclosure of "the names of specific database

8   reports would reveal which databases and reports are used in particular circumstances" –

9   specifically, in the context of specific operational instructions for "Responding to Potential

10  Terrorists Seeking Entry Into the United States" – and, therefore, "could lead to circumvention

11  of CBP law enforcement efforts or facilitate improper access to the database for the purpose of

12  frustrating CBP law enforcement functions."  *Vaughn* index (Document 5).  Thus, this

13  information was not redacted in a vacuum but from documents that describe how these database

14  reports or modules are used in CBP's law enforcement efforts.  Such information is properly

15  exempt.  *See Boyd v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 496 F.Supp.2d 167,

16  171 (D.D.C. 2007) (concluding that information identifying how data is retrieved from a

17  computer system "could provide information on the structure of the mainframe system used and

18  expose the system to circumvention" or "facilitate unauthorized access" and was therefore

19  properly withheld under Exemption 2).

20         In like fashion, plaintiffs' representation that CBP has "redacted information in a number

21  of documents that identified watchlists," Pl. Mem. at 10, is incorrect.  As the *Vaughn* index

22  states, CBP has redacted "information related to the *operation* of government watchlists," *see*

23  *Vaughn* index (Documents 23, 25, 29, 32, 34, 43) (emphasis supplied), not merely "the names of

24

25         [7] A "system of records" does not necessarily include every database maintained by an
    agency, but is defined as "a group of any records under the control of any agency from which
26  information is retrieved by the name of the individual or by some identifying number, symbol, or
    other identifying particular assigned to the individual."  5 U.S.C. § 552a(a)(5).
27

28  Def. Opp. to Pl. Mot. Summ. J. & Reply in Supp. Def. Mot. Summ. J.                              5

1   such watchlists." Pl. Mem. at 10.  Release of the precise operational details regarding how

2   watchlists are utilized in particular circumstances "would permit persons to devise strategies

3   designed to circumvent the examination and inspection procedures developed by CBP." *Vaughn*

4   Index (Documents 23, 25, 29, 32, 34, 43).  Further, the fact that it is publicly known that CBP

5   utilizes watchlists has no bearing on whether the release of information concerning when a

6   watchlist is utilized, or by whom, or for what reason, would risk circumvention of the law if

7   disclosed.  *See Gordon v. FBI*, 388 F. Supp. 2d 1028, 1035-37 (N.D. Cal. 2005) (upholding

8   pursuant to Exemptions 2 and 7(E), the withholding of (1) watch list selection criteria; (2)

9   procedures for dissemination of watch lists; (3) procedures for handling potential/actual name

10  matches; (4) raising/addressing perceived problems in security measures; and (5) compilation of

11  watch lists (involving such things as the adding or removing of names)).

12          Finally, plaintiffs' argument is no more successful with respect to the "names of

13  databases" that the agency has redacted pursuant to Exemptions 2 (high) and 7(E).  While it is

14  true that defendant has published numerous "Systems of Records" Notices (SORNs) pursuant to

15  the Privacy Act,[8] the mere publication of the "name and location" of a "system of record" – even

16  assuming all of the databases at issue here are subject to the Privacy Act – is not the same as

17  revealing *which* database is utilized in particular circumstances, *who* is responsible for utilizing

18  the database, or *how* the database is utilized in specific circumstances.  It is precisely these

19  details – that have not been disclosed to the public – that would be revealed if defendant were

20  

21          [8]  *See, e.g.,* 73 Fed. Reg. 43,462 (July 25, 2008) (SORN relating to the Non-Federal
    Entity Data System); 73 Fed. Reg. 43,457 (July 25, 2008) (SORN relating to the Border Crossing
22  Information (BCI) database); 73 Fed. Reg. 32,720 (June 10, 2008) (SORN relating to the
    Electronic System for Travel Authorization (ESTA) database); 72 Fed. Reg. 48,349 (Aug. 23,
23  2007) (SORN relating to Advanced Passenger Information System (APIS)); 72 Fed. Reg. 43,650
    (Aug. 6, 2007) (SORN relating to the Automated Targeting System (ATS)); 68 Fed. Reg. 69,414
24  (Dec. 12, 2003) (SORN relating to the Enforcement Operational Immigration Records
    (ENFORCE/IDENT) system); 68 Fed. Reg. 69,412 (Dec. 12, 2003) (SORN relating to the
25  Arrival and Departure Information System (ADIS)); 66 Fed. Reg. 52, 984 (Oct. 11, 2001)
26  (SORN relating to over 90 systems of records maintained by CBP's predecessor agency, the
27  United States Customs Service).

1    forced to disclose the names of databases redacted from the responsive records because the

2    "names of databases" are presented in the context of specific law enforcement procedures.  As

3    defendant has explained, disclosure of this information – the precise way in which CBP uses a

4    specific database in particular circumstances – "could lead to circumvention of CBP law

5    enforcement efforts or facilitate improper access to the databases for purposes of frustrating CBP

6    law enforcement functions."  *See Vaughn* index (Documents 2, 4, 8, 9, 10, 13, 14, 17, 18, 24, 39,

7    41); *see Cozen O'Connor v. Dep't of Treasury*, 570 F. Supp. 2d 749, 786 (E.D. Pa. 2008)

8    (upholding the redaction pursuant to Exemption 7(E) of "material regarding government and

9    non-government databases and information services," reasoning that "[t]errorist organizations

10   and hostile nations could avoid or misdirect Treasury's sanctions investigations and

11   implementation if they knew what databases . . . were being used to gather information about

12   them.").[9]

13          Other courts have recognized the distinction between publicly available information of a

14   high degree of generality and information that would reveal specific operational details if

15   disclosed, and have rejected arguments similar to plaintiffs.  *See, e.g., Berman v. C.I.A.*, 501 F.3d

16   1136, 1144 (9th Cir. 2007) (rejecting a similar argument in the context of Exemption 3 that the

17   public availability of "similar if not identical information" requires disclosure because, in part,

18   the publicly available documents were "written at a greater level of generality."); *Coastal

19   Delivery Corp. v. U.S. Customs Serv.*, 272 F. Supp. 2d 958, 964 (C.D. Cal. 2003) (refusing to

20   disclose pursuant to the FOIA the number of containers examined at the Los Angeles/Long

21   Beach seaport notwithstanding public disclosure of "CET Hold" forms that contain similar

22   information).  Indeed, contrary to plaintiffs' logic, the fact that so much information regarding

23   CBP's law enforcement databases has been published in the Federal Register could only amplify

24

25          [9] Plaintiffs' speculation that the government has redacted the name of the same database
26   as both "high 2" and "low 2" is unfounded.  Pl. Mem. at 12.  As Ms. Suzuki's declaration states,
     the single "low 2" redaction of a database name occurred with respect to "a local database that is
27   no longer in use."  Suzuki Decl. ¶ 20.  In short, the redactions involve different databases.

28   Civil Action No. 4:08-0842 (CW)
     Def. Opp. to Pl. Mot. Summ. J. & Reply in Supp. Def. Mot. Summ. J.                              7

the risk of circumvention of the law that would accompany the disclosure of these details, because those intent on circumventing the law could combine the information the agency is seeking to protect with publicly available information to better understand – and thwart – the agency's law enforcement efforts.  As courts have long-recognized, "'bits and pieces' of data 'may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself.'" *Center for Nat. Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 928 (D.C. Cir. 2003) (quoting *C.I.A. v. Sims*, 471 U.S. 159, 178 (1985)).  And, "'[w]hat may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context.'"  *Sims*, 471 U.S. at 178 (quoting *Halkin v. Helms*, 598 F.2d 1, 9 (1978)); *see also Coastal Delivery Corp. v. U.S. Customs Serv.*, 272 F. Supp. 2d. 958, 965 (C.D. Cal. 2003) ("[T]he information is not of obvious importance in itself; but, it were released to plaintiff and combines [sic] with other known data, in a 'mosaic' analysis, it could lead to identification of substantive information in the file which has been withheld." (quoting *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1064-65 (3d Cir. 1995)).  Thus, defendant's redaction of the names of certain databases pursuant to Exemptions 2 and 7(E) is proper.

      **b.**     The second category of exemptions plaintiffs challenge consists of "specific topics for questioning" individuals attempting to enter the United States.  *See* Pl. Mem. at 12-13.  Plaintiffs do not challenge the logic of defendant's withholding – that release of questions used during border inspection could allow persons to devise strategies for circumvention of the law – but argue instead that the information should be disclosed because plaintiffs seek only a "limited segment of interview topics" – "policies and procedures on the questioning of travelers regarding political views, religious practices, and other activities potentially covered by the First Amendment."  Pl. Mem. at 12.  Even if one were to accept plaintiffs' dubious contention that their request is "limited," plaintiffs provide no legal basis for excepting this material from the ambit of Exemptions 2 (high) and 7(E), and, indeed, none exists.  *See, e.g., Moayedi v. U.S.*

1  *Customs & Border Prot.*, 510 F. Supp. 2d 73, 85 (D.D.C. 2007).[10]  Furthermore, if plaintiffs'

2  argument were to prevail, there would be no grounds for withholding other self-described

3  "limited" requests for topics of questioning at the border, *see Maricopa Audubon Soc'y v. U.S.*

4  *Forest Serv.*, 108 F.3d 1082, 1088 (9th Cir. 1997) ("FOIA does not permit selective disclosure of

5  information only to certain parties"), and soon the entire universe of questions used by CBP for

6  its law enforcement mission would be disclosed, with predictably detrimental effect on CBP's

7  law enforcement efforts.

8       **c.**     Third, plaintiffs challenge defendant's redaction of information relating to CBP's

9  "procedures for coordination with other law enforcement agencies" in certain specific law

10  enforcement circumstances.  *See Vaughn* index (Documents 4, 10, 13, 14, 17, 39).  In support of

11  this contention plaintiffs cite two unpublished opinions in which district courts ordered the

12  release of such information after the government in each case failed to explain the risk of

13  circumvention.  *See Shearson v. Dep't of Homeland Sec.*, Case No. 06-cv-1478, 2007 WL

14  764026, at *5 (N.D. Ohio Mar. 9, 2007); *Hamilton v. Weise*, Case No. 95-cv-1161, 1997 U.S.

15  Dist. LEXIS 18900, at *32 (M.D. Fla. Oct. 1, 1997).  These decisions are not persuasive.

16  Disclosure of CBP's "procedures for coordination with other law enforcement agencies" risks

17  circumvention of the law because it would permit persons to know what or who triggers an alert

18  to another specific law enforcement agency (*i.e.*, when does CBP consider a threat serious

19  enough to involve other law enforcement agencies).  Obviously, knowledge of this information

20  would permit those seeking to circumvent the law to know what or who *doesn't* trigger

21  coordination with another law enforcement agency, and devise strategies to avoid these triggers.

22

23       [10]  Plaintiffs' *cf.* cite to *Crooker v. Bureau of Alcohol, Tobacco, & Firearms*, 670 F.2d
1051 (D.C. Cir. 1981), is curious.  In that case the Court of Appeals for the District of Columbia

24  Circuit upheld the redactions of portions of a law enforcement manual that concerned
"investigatory techniques" pursuant to Exemption 2 (High), and that such information, despite

25  having "some effect at the public at large," "involves no 'secret law' of the agency."  670 F.2d at
1073; *see also id.* at 1074 & n. 60 ("It is not up to this court to balance the public interest in

26  disclosure against any reason for avoiding disclosure" nor "to decide which disclosures are in the
public interest.").  In short, *Crooker* supports defendant's redaction of all topics of questioning.

27

28

1   *See Vaughn* index (Documents 4, 10, 13, 14, 17, 39).  Accordingly, this level of detail regarding

2   CBP's law enforcement procedures is clearly protected by Exemptions 2 and 7(E).  *See Morley*

3   *v. C.I.A.*, 508 F.3d 1108, 1128-29 (D.C. Cir. 2007) (upholding the redaction pursuant to

4   Exemption 7(E) of "certain techniques and procedures used by law enforcement agencies in

5   coordination with CIA" during background investigations); *Cozen O'Connor v. Dep't of*

6   *Treasury*, 570 F. Supp. 2d 749, 785-86 (E.D. Pa. 2008) (upholding the redaction pursuant to

7   Exemption 7(E) of information relating to "the timing and the level of governmental

8   cooperation," reasoning that "[t]errorist organizations and hostile nations could avoid or

9   misdirect Treasury's sanctions investigations and implementation if they knew . . . what

10  government sources were being used to gather information about them."); *Gordon v. FBI*, 388 F.

11  Supp. 2d 1028, 1035-36 (N.D. Cal. 2005) (upholding the redaction pursuant to Exemptions 2 and

12  7(E) of information relating to "procedures for dissemination of watchlists").

13         **d.**      Finally, plaintiffs contest the redaction of information from various versions of a

14  document entitled "Interim Guidelines for Border Search/Examination of Documents, Paper and

15  Electronic Information," *see Vaughn* index (Documents 20, 22, 23, 29), on the ground that it has

16  been "superceded" by a document entitled "Policy Regarding Border Search of Information" that

17  has been made available to the public.  Pl. Mem. at 13.  Plaintiffs' argument is flawed.  First, the

18  publicly available document does not state that it "supercedes" the interim guidance, and

19  therefore doesn't foreclose the possibility that specific operational procedures not directly

20  addressed by the new "Policy Regarding Border Search of Information" remain in effect or may

21  be adopted again in the future.  In addition, as a cursory review of the documents at issue

22  indicates,[11] the agency redacted a small amount of information from these documents.  This

23  information concerns "the scope and focus of certain law enforcement techniques" the release of

24  which "would permit persons to devise strategies designed to circumvent the examination and

25

26

27         [11] *See* Exhibit 8 to the Declaration of Marcia Hofmann (hereinafter "Hofmann Decl.").

28  Civil Action No. 4:08-0842 (CW)
    Def. Opp. to Pl. Mot. Summ. J. & Reply in Supp. Def. Mot. Summ. J.                          10

1   inspection procedures developed by CBP." *See Vaughn* index (Documents 20, 22, 23, 29).[12]

2   This information has not been made publicly available, and plaintiffs' argument is without merit.

3   ### 2.   *Law Enforcement Techniques and Procedures are Categorically Exempt*

4        As the foregoing demonstrates, defendant has adequately described how disclosure of

5   material it withheld pursuant to Exemptions (2) (high) and (7)(E) risks circumvention of the law,

6   and defendant therefore is entitled to summary judgment even under plaintiff's view of the law.

7   As is clear from the statute's text and legislative history, however, and as has been recognized by

8   several recent decisions, the Court may also uphold defendant's redaction of law enforcement

9   "techniques and procedures" without finding that disclosure risks circumvention of the law.

10  Plaintiffs' argument to the contrary is not persuasive, and should, if necessary, be rejected.

11       As with any issue of statutory interpretation, the appropriate starting point is the text of

12  the statute itself.  *K & N Engineering, Inc. v. Bulat*, 510 F.3d 1079, 1081 (9th Cir. 2007).  The

13  relevant statutory text provides that the FOIA –

14           does not apply to . . . records or information compiled for law enforcement
             purposes, but only to the extent that the production of such law enforcement
15           records or information . . . (E) would disclose techniques and procedures for law
             enforcement investigations or prosecutions, or would disclose guidelines for law
16           enforcement investigations or prosecutions if such disclosure could reasonably be
             expected to risk circumvention of the law. . . .
17
18  5 U.S.C. § 552(b)(7)(E).  Subpart (E) contains two distinct clauses separated by a disjunctive.

19  The required showing of harm – "risk of circumvention of the law" – follows the second clause

20  without a comma, which supports the inference that this condition applies only to the second

21  clause concerning guidelines for law enforcement investigations or prosecutions.  *See Wright v.

22  Lubinko*, 515 F.2d 260, 263-64 (9th Cir. 1975).  If, as plaintiffs contend, the harm requirement

23  were meant to apply to all three types of records, Congress would have drafted the subsection in

24  a single clause, such as: "(E) would disclose techniques, procedures, and guidelines for law

25  ─────────────────

26       [12]  As stated in the *Vaughn*, "CBP is unable to further describe these techniques, methods
         and guidelines without revealing that which it seeks to protect."  *Vaughn* index (Documents 20,
27       22, 23, 29).

28

1    enforcement investigations or prosecutions if such disclosure could reasonably be expected to

2    risk circumvention of the law."  Congress did not enact this provision, and it must be presumed

3    that Congress did not intend for the additional language (*i.e.*, the second clause) to be

4    superfluous.  *See Platt v. Union Pac. R.R. Co.*, 99 U.S. 48, 58-59 (1878) ("[T]he admitted rules

5    of statutory construction declare that a legislature is presumed to have used no superfluous

6    words.  Courts are to accord a meaning, if possible, to every world in a statute."); *United States*

7    *v. Watkins*, 278 F.3d 961, 966 (9th Cir. 2002).

8         Defendant's interpretation of this subsection is confirmed by the legislative history.  Prior

9    to 1986, Exemption 7(E) had permitted withholding of only "investigative techniques and

10   procedures."  5 U.S.C. § 552(b)(7)(E) (1982); *Crooker*, 670 F.2d at 1053 n.2.  In 1986, Congress

11   amended Exemption (7)(E), along with the rest of 5 U.S.C. § 552(b)(7), as part of a general

12   effort to broaden the scope of information that could be withheld pursuant to this subsection.

13   *See* Freedom of Information Reform Act of 1986, Pub. L. No. 99-570, Title I, § 1802(a), 100

14   Stat. 3207-48 (1986); *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489

15   U.S. 749, 756 n.9 (1989).  First, the amendment "changed the threshold requirement for

16   withholding information under [E]xemption 7: the exemption formerly covered 'investigatory

17   records compiled for law enforcement purposes'; it now applies more broadly to 'records or

18   information compiled for law enforcement purposes.'"  *North v. Walsh*, 881 F.2d 1088, 1098 n.

19   14 (D.C. Cir. 1989).  Second, Congress amended the first clause of subsection 7(E) to "make

20   clear that 'techniques and procedures for law enforcement investigations and prosecutions' can

21   be protected, regardless of whether they are 'investigative' or non-investigative."  *See* S. Rep.

22   No. 98-221, at 24 (Exhibit 1 to the attached Declaration of John R. Coleman).  Finally,

23   "Congress also amended Exemption 7(E) to permit withholding of '*guidelines* for law

24   enforcement investigations or prosecutions if such disclosure could reasonably be expected to

25   risk circumvention of the law. . . .'" *Tax Analysts v. I.R.S.*, 294 F.3d 71, 79 (D.C. Cir. 2002)

26   (citing 5 U.S.C. § 552(b)(7)(E); S.Rep. No. 98-221, at 24 (1983)).  The addition of the second

27

28

clause regarding "guidelines" was "intended to address some confusion created by the D.C.

Circuit's en banc holding in *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 771 (D.C. Cir.

1978)," which had found guidelines for drug prosecutions ineligible for withholding under

Exemption 2, while still requiring that guidelines only be withheld when their disclosure could

risk circumvention of the law. *See* S. Rep. No. 98-221, at 25; *see also* Attorney General's

Memorandum on the 1986 Amendments to the Freedom of Information Act (citing S. Rep. No.

221, 98th Cong. 1st Sess. 25 (1983)), *available at* http://www.usdoj.gov/oip/86agmemo.htm.

Thus, the legislative history confirms that defendant must demonstrate "a risk of circumvention

of the law" only with respect to "guidelines."

The district court's contrary view in *Feshbach v. SEC*, 5 F. Supp. 2d 774, 786 n.11 (N. D.

Cal. 1997), presented in a footnote, is not persuasive and should be disregarded.  The other

decisions cited by plaintiff, and relied on by *Feshbach*, do not directly address the issue, but

simply assumed without analysis that the harm requirement applied to both clauses.  In sum, the

statute's text and legislative history, and the numerous, recent decisions adopting defendant's

position cited in defendant's opening brief, demonstrate that "Exemption 7(E) provides

categorical protection for techniques and procedures used in law enforcement investigations or

prosecutions."  *Keys v. Dep't of Homeland Sec.*, 510 F. Supp. 2d 121, 129 (D.D.C. 2007)

(quoting *Judicial Watch v. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004)); *see

also Am. Civil Liberties Union v. Dep't of Defense*, 543 F.3d 59, 79 (2d Cir. 2008) ("Exemption

7(E) was expanded [in 1986] to allow agencies to withhold information that would disclose law

enforcement guidelines – in addition to the already protected techniques and procedures – if

disclosure of the guidelines 'could reasonably be expected to risk circumvention of the law.'").[13]

_____

[13]  Contrary to plaintiffs' suggestion, the Court should have little trouble distinguishing "techniques and procedures" from "guidelines" should the need arise.  Many of the documents containing redactions are explicitly labeled as providing "standard operating procedures" at the border, *see Vaughn* index, and most if not all of the documents are substantively distinct from the guidelines for the exercise of prosecutorial discretion at issue in *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 771 (D.D.C. 1978), which was the impetus for including the second

1           **3.**     **_Defendant Properly Withheld Agency Records Pursuant to Exemption 2 (Low)_**

2           Exemption 2 (low) protects from disclosure "[p]redominantly internal documents that

3    deal with trivial administrative matters" of no genuine public interest. *Schiller v. N.L.R.B.*, 964

4    F.2d 1205, 1207 (D.C. Cir. 1992). Pursuant to this exemption, defendant redacted "the location

5    of information stored on an internal network." Suzuki Decl. ¶ 20; *see also* Ex. 8 to Hofmann

6    Decl. at Bates No. 000575. As defendant explained, this information is "purely internal" and

7    because "access to the file and computer system is restricted from the public, the public has little

8    or no interest in this information." *Id.* In addition, defendant redacted the name of a database

9    that was formerly used by the Tucson Field Office, but is no longer in use. Suzuki Decl. ¶ 20;

10   *see also* Ex. 8 to Hoffman Decl. at Bates No. 000578.

11          Plaintiffs do not explain why the location of information on a purely internal network or

12   the name of an obsolete database, would be of "genuine public interest," *Schiller*, 964 F.2 at

13   1207 (quoting *Schwaner v. Dep't of Air Force*, 898 F.2d 793, 794 (D.C. Cir. 1990)), but again

14   argue that the Privacy Act's requirement that agencies publish in the Federal Register, "the name

15   and location" of any system of records, 5 U.S.C. § 552a(e)(4)(A), somehow demonstrates the

16   public interest in this purely internal information. This argument is meritless. First, plaintiffs

17   incorrectly label the information redacted from Bates No. 000575, as a "name" of the database.

18   Pl. Mem. at 14. In fact, this information consists of the location of the information on an internal

19   network, not the name of a database. *See* Suzuki Decl. ¶ 20. Second, defendant redacted the

20   name of an obsolete database pursuant to "low 2," because the public has no legitimate interest

21   in the name of a local database that is no longer in use. As a result, plaintiff's argument based on

22   the Privacy Act – meritless in any case – has no application here, and the cases relied on by

23   defendant do support redaction of this type of trivial, administrative information pursuant to

24   Exemption 2 (low). *See NYC Apparel FZE v. U.S. Customs & Border Prot.*, 484 F. Supp. 2d 77,

25   ────────────────

26   clause of Exemption 7(E) in the 1986 amendments. *See* S. Rep. No. 98-221, at 25; *see also*
     *Crooker*, 670 F.2d at 1075 (distinguishing the guidelines at issue in *Jordan* from the law

27   enforcement manual at issue in *Crooker*).

28

1  93 (D.D.C. 2007); Ex. 9 to Hofmann Decl.; *Changzhou Laosan Group v. U.S. Customs & Border*

2  *Prot.*, Case No. 04-cv-1919, 2005 WL 913268, at *3 (D.D.C. April 20, 2005); Ex. 10 to

3  Hofmann Decl.; *Poulsen v. U.S. Customs & Border Prot.*, Case No. 06-cv-1743, 2006 WL

4  2788239 (N.D. Cal. Sept. 26, 2006).

5  **B.    Defendant Properly Withheld Agency Records Pursuant to Exemption 5**

6          Pursuant to Exemption 5, 5 U.S.C. § 552(b)(5), defendant redacted information in two

7  documents on the ground that the information is subject to the deliberative process privilege.  As

8  is required, this information is both "'predecisional," which means that it has been "prepared in

9  order to assist an agency decisionmaker at arriving at his decision," and "deliberative," which

10  means that disclosure "would expose an agency's decision-making process in such a way as to

11  discourage candid discussion with the agency and thereby undermine the agency's ability to

12  perform its functions." *Assembly of the State of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916,

13  920 (9th Cir. 1992) (internal quotations and citations omitted).

14          First, the agency redacted hand written notes from a document entitled "Interim

15  Procedures for Border Search/Examination of Documents, Papers, and Electronic Information

16  [Redacted]."  Suzuki Decl. ¶ 26; *Vaughn* Index (Document 29); Hofmann Ex. 8 (Bates No. 625-

17  26).  As defendant explained, disclosure of these handwritten notes "would reveal how one CBP

18  employee prioritized different facts, what he considered to be important and his interpretation of

19  certain provisions" as he reviewed these "Interim Procedures."  Suzuki Decl. ¶ 26.  Such

20  information is predecisional because it "reflect[s] the personal opinions of the writer rather than

21  the policy of the agency."  *Assembly of the State of Cal.*, 968 F.2d at 920; *see also Electronic*

22  *Privacy Information Center v. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 113 n.18 (D.D.C.

23  2005) (information is predecisional if it "reflect[s] the preliminary thoughts of . . . agency

24  personnel.").  Thus, "these notations were the private thoughts and opinions of one individual

25  and do not reflect an agency decision or policy." Suzuki Decl. ¶ 27.  And, an important purpose

26  of the deliberative process privilege is "to prevent public confusion that might be caused by

27

28

1   disclosure of reasons and rationales that were not ultimately the grounds for the agency's

2   action." *Krikorian v. Dep't of State*, 984 F.2d 461, 466 (D.C. Cir. 1993) (quoting *Fisher v. Dep't*

3   *of Justice*, 772 F. Supp. 7, 10-11 (D.D.C. 1991)). Further, the document itself states that the

4   procedures are "Interim" and Ms. Suzuki's declaration states that the handwritten notes were

5   made "in order to assist in later deliberations." Suzuki Decl. ¶ 26; *Vaughn* Index (Document

6   29). Accordingly, the record demonstrates that these notes were predecisional and deliberative

7   and therefore appropriately redacted pursuant to Exemption 5.

8        Second, defendant redacted from Document 40 (Bates Stamp No. 679) information that

9   "reflects deliberations and potential courses of action that were discussed as the agency moved

10  towards a decision on drafting a standard operating procedure." Suzuki Decl. ¶ 27. The *Vaughn*

11  Index describes this document as a "January 18, 2008 e-mail regarding 'Conference Call,'" and

12  the redacted information, in particular, as a "recommendation."' *Vaughn* index (Document 40).

13  Furthermore, Ms. Suzuki explains in her declaration that the material withheld "reveals internal

14  agency deliberations about the possibility of drafting a standard operating procedure." Suzuki

15  Decl. ¶ 27. Accordingly, plaintiffs' reliance on *Coastal States Gas Corp. v. Dep't of Energy*, 67

16  F.2d 854 (D.C. Cir. 1980), is misplaced. The legal memoranda at issue in *Coastal States* were

17  themselves effectively creating binding agency policy, *see* 67 F.2d at 860, and "were not

18  suggestions or recommendations as to what agency policy should be." *Id.* at 868. By contrast,

19  the information redacted from Document 40 was a "recommendation" and defendant has clearly

20  met its burden for withholding this material pursuant to Exemption 5.

21  **C.   Defendant Has Released All Released All Reasonably Segregable Portions of
         Responsive Records**

22       Finally, defendant has met its burden of producing all reasonably segregable portions of

23  responsive records. 5 U.S.C. § 552(b). As explained in Ms. Suzuki's declaration, defendant

24  identified 689 pages of records responsive to plaintiffs' request. Suzuki Decl. ¶ 17. Of this total,

25  defendant produced 352 pages in full, and 309 pages with redactions. *Id.* Defendant's care in

26  releasing all segregable material is demonstrated throughout these pages. *See* Ex. 8 to Hofmann

27

28

Decl.  The redactions from within these documents are most often comprised of single sentences or clauses, and in many instances single words.  *See id.*  Finally, defendant withheld 28 pages of responsive records in full.  Suzuki Decl. ¶ 17.  Defendant described in detail the basis for the redactions from these 28 pages of documents in its *Vaughn* Index, and explained that "[t]o the extent that there is any non-exempt information in Bates Stamp numbers 662-689, we assert that after conducting a line-by-line review, it is inextricably intertwined with the exempt information and therefore no portions can be segregated and disclosed."  Suzuki Decl. ¶ 32.  Further, "[t]he few non-exempt words and phrases that are dispersed throughout the [twenty-eight pages of] records withheld in full, if disclosed, would be meaningless . . . ."  Agencies are not required to produce records that, after redaction of exempt material, consist of only such meaningless fragments.  *See Nat'l Sec. Archive v. CIA*, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005); *Klamath Siskiyou Wildlands Ctr. v. U.S. Dep't of the Interior*, Case No. 07-cv-325, 2007 WL 4180685, at *8 (D. Or. Nov. 21, 2007); *see also NRDC v. Dep't of Defense*, 388 F. Supp. 2d 1086, 1097 (C.D. Cal. 2005) ("'[I]f only ten percent of the material is non-exempt and it is interspersed line-by-line throughout the document, an agency claim that it is not reasonably segregable because the cost of line-by-line analysis would be high and the result would be a meaningless set of words and phrases might be accepted.'") (quoting *Mead Data Ctr., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)).

Thus, with respect to the twenty-eight pages withheld in full, defendant has "provide[d] a 'statement of its reasons' for not segregating and 'describe[d] what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document.'"  *NRDC*, 388 F. Supp. 2d at 1105 (quoting *Mead*, 566 F.2d at 261).  Accordingly, the record before the Court establishes that defendant has disclosed all reasonably segregable portions of responsive records, and is therefore entitled to summary judgment.

## CONCLUSION

1    For the foregoing reasons, defendant respectfully requests that the Court grant its motion

2 for summary judgment and deny plaintiffs' cross motion for summary judgment.

3

4 Dated: November 5, 2008

5                                          Respectfully submitted,

6                                          GREGORY G. KATSAS
                                           Assistant Attorney General
7
                                           JOSEPH P. RUSSONIELLO
8                                          United States Attorney

9                                          JOHN R. TYLER
                                           Assistant Director, Civil Division
10
                                           */s/ John R. Coleman*
11                                         JOHN R. COLEMAN (Va. Bar # 70908)
                                           Civil Division, Federal Programs Branch
12                                         U.S. Department of Justice
                                           20 Massachusetts Ave., N.W., Room 6118
13                                         Washington, D.C. 20530
                                           Telephone: (202) 514-4505
14                                         Fax: (202) 616-8460
                                           Email: john.coleman3@usdoj.gov
15
                                           *Attorneys for Defendants*
16

17

18

19

20

21

22

23

24

25

26

27

28