Shirin Sinnar (230005)
*shirins@asianlawcaucus.org*
ASIAN LAW CAUCUS
939 Market St., Suite 201
San Francisco, CA 94103
Telephone: (415) 896-1701
Facsimile: (415) 896-1702

Marcia Hofmann (250087)
*marcia@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone: (415) 436-9333 x116
Facsimile: (415) 436-9993

Attorneys for Plaintiffs
ASIAN LAW CAUCUS and ELECTRONIC
FRONTIER FOUNDATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

|  |  |
|---|---|
| ASIAN LAW CAUCUS | NO. 08-0842 CW |
| and | **REPLY IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT** |
| ELECTRONIC FRONTIER FOUNDATION, | |
| Plaintiffs, | Date:        December 4, 2008 |
| | Time:        2:00 p.m. |
| v. | Courtroom:   2, 4th Floor |
| DEPARTMENT OF HOMELAND SECURITY, | |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

I.   INTRODUCTION ................................................................................................... 1

II.  ARGUMENT ........................................................................................................... 1

    A.   DHS Is Required To Demonstrate a Risk of Circumvention of the Law for All Records Withheld under Exemption 7(E) ........................................................... 1

    B.   DHS Has Failed to Demonstrate That Disclosure of Records Withheld Pursuant to Exemptions "High 2" or 7(E) Would Risk Circumvention of the Law ..... 4

    C.   DHS Has Failed to Justify Its Exemption "Low 2" Withholdings ......................... 11

    D.   DHS Has Improperly Withheld Agency Records Under Exemption 5 ................. 12

    E.   DHS Has Failed to Segregate Exempt Materials From Non-Exempt Material, as the Freedom of Information Act Requires .................................................... 14

III. CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*Assembly of the State of Cal. v. Assembly Comm. on Elections*, 968 F.2d 916 (9th Cir. 1992)....... 13

*Barkett v. Dep't of Justice*, No. 86-2029, 1989 U.S. Dist. LEXIS 7984, 1989 WL 930993 (D.D.C. July 18, 1989) ..................................................................................................................... 2

*Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291 (N.D. Cal. 1992) ......................................................................................................................... 14

*Berman v. C.I.A.*, 501 F.3d 1136, 1143 (9th Cir. 2007)......................................................... 8

*Billington v. Dep't of Justice*, 69 F. Supp. 2d 128 (D.D.C. 1999).......................................... 2

*Billington v. Dep't of Justice,* 233 F.3d 581 (D.C. Cir. 2000)................................................ 2

*Boyd v. BATF*, 496 F. Supp. 2d 167 (D.D.C. 2007) ............................................................... 5

*Boyd v. BATF*, 570 F. Supp. 2d 156 (D.D.C. 2008) ............................................................... 2

*C.I.A. v. Sims*, 471 U.S. 159 (1985).................................................................................. 7, 8

*Coastal Delivery Corp. v. U.S. Customs Serv.*, 272 F. Supp. 2d 958 (C.D. Cal. 2003) ............ 8

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) ...................... 13

*Cozen O'Connor v. Dep't of the Treasury*, 570 F. Supp. 2d 749 (E.D. Pa. 2008)............ 2-3, 6, 10

*Crooker v. BATF*, 670 F.2d 1051 (D.C. Cir. 1981) ........................................................... 2,3

*Ctr. for Nat. Sec. Studies v. Dep't of Justice*, 331 F.3d 918 (D.C. Cir. 2003) ...................... 8

*Detroit Free Press v. Ashcroft*, 303 F.3d 681 (6th Cir. 2002) ............................................... 7

*El Badrawi v. Dep't of Homeland Security*, No. 07-372, 2008 U.S. Dist. LEXIS 76038, 2008 WL 4480363 (D. Conn. Sept. 30, 2008) ............................................................................... 6, 7

*Feshbach v. SEC*, 5 F. Supp. 2d 774 (N.D. Cal. 1997).......................................................... 2

*Fisher v. Dep't of Justice,* 772 F. Supp. 7 (D.D.C. 1991) ..................................................... 1

*Fisher v. Dep't of Justice,* 968 F.2d 92 (D.C. Cir. 1992) ...................................................... 1

*Gerstein v. Dep't of Justice*, No. 03-04893 RMW, 2005 U.S. Dist. LEXIS 41276 (N.D. Cal. Sept. 30, 2005)........................................................................................................... 7, 8, 10

*Gordon v. FBI*, 388 F. Supp. 2d 1028 (N.D. Cal. 2005).......................................... 2, 6, 10

*Hidalgo v. FBI*, 541 F. Supp. 2d 250 (D.D.C. 2008)............................................................. 2

*Hunt v. C.I.A.*, 981 F.2d 1116 (9th Cir. 1992)...................................................................... 8

*Juda v. U.S. Customs Service*, No. 98-0522, 1999 U.S. Dist. LEXIS 12536 (D.D.C. Aug. 2, 1999) .. ........................................................................................................................................... 2

*Juda v. U.S. Customs Service,* No. 99-5333, 2000 U.S. App. LEXIS 17985, 2000 WL 1093326 (D.C. Cir. June 19, 2000) ............................................................................................. 2

*Judicial Watch Inc., v. Dep't of Commerce*, 337 F. Supp. 2d 146 181 (D.D.C. 2004) ................... 2

*Keys v. Dep't of Homeland Security*, 510 F. Supp. 2d 121 (D.D. C. 2007)................................... 2

*L.A. Times Communs. LLC v. Dep't of Labor*, 483 F. Supp. 2d 975 (C.D. Cal. 2007) ................. 14

*Lawyers' Comm. For Civil Rights of San Francisco Bay Area v. Dep't of the Treasury*, No. 07-2590 PJH, 2008 U.S. Dist. LEXIS 87624, 2008 WL 448285 (N.D. Cal. Sept. 30, 2008).......... 14

*Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089 (9th Cir. 1997)............................ 13

*Mead Data Cent., Inc. v. Dep't of the Air Force*, 556 F.2d 424 (D.C. Cir. 1977) ........................ 14

*Morley v. C.I.A.*, 508 F.3d 1108 (D.C. Cir. 2007)..................................................................... 10

*Perrone v. FBI*, 908 F. Supp. 24 (D.D.C. 1995) ........................................................................ 9

*Peter S. Herrick's Customs & Int'l Trade Newsletter v. Customs and Border Protection*, No. 04-00377, 2006 U.S. Dist. LEXIS 77935, 2006 WL 1826185 (D.D.C. July 20, 2006) ................... 2

*PHE, Inc. v. Dep't of Justice*, 983 F.2d 248 (D.C. Cir. 1993) ........................................................ 2

*Rosenfeld v. Dep't of Justice*, 57 F.3d 803 (9th Cir. 1995)................................................. 5-6, 9

*Smith v. BATF,* 977 F. Supp. 496  (D.D.C. 1997) ...................................................................... 2

*Strang v. Collyer*, 710 F. Supp. 9 (D.D.C. 1989) ..................................................................... 13

*Strang v. Collyer,* 899 F.2d 1268 (D.C. Cir. 1990) .................................................................. 13

*Tabbaa v. Chertoff*, 509 F.3d 89 (2d Cir. 2007)....................................................................... 9

*Unidad Latina en Accion v. Dep't of Homeland Security*, No. 07-1224, 2008 U.S. Dist. LEXIS 76033, 2008 WL 4414195 (D. Conn. Sept. 30, 2008) ................................................................ 2

*United States v. Jordan*, 591 F.2d 771 (D.C. Cir. 1978) ................................................................ 3

*United States v. Rozet*, 183 F.R.D. 662 (N.D. Cal. 1998)............................................................ 13

*Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975)..................................................................... 13

**STATUTES**

5 U.S.C. § 552(a)(4)(B) ........................................................................................................ 11, 15

5 U.S.C. § 552(b)(7) ................................................................................................................. 3, 4

5 U.S.C. § 552(b)(7)(E) ............................................................................................................. 3

5 U.S.C. § 552a(5) ................................................................................................ 12

5 U.S.C. § 552a(e)(4)(D) ......................................................................................... 6

5 U.S.C. § 552a(e)(4)(E) .......................................................................................... 6

**OTHER AUTHORITIES**

Bruce Schneier, Op-Ed, *Fingerprinting Visitors Won't Offer Security*, Newsday (N.Y.), Jan. 14, 2004 .......................................................................................................... 12

D.C. Circuit Rule 32.1(b)(1)(A) ............................................................................... 1

David E. Pozen, Note, *The Mosaic Theory, National Security, and the Freedom of Information Act*, 115 Yale L.J. 628 (2005) .............................................................................. 7

Editorial and Comment, *Keeping Score*, Columbus Dispatch (Ohio), Dec. 6, 2006 .................... 12

Editorial, *Data Does Cross Line on Privacy*, Detroit Free Press, Aug. 21, 2008 ..................... 12

Editorial, *Targeting Travelers*, Balt. Sun-Trib., Oct. 1, 2007 ........................................ 12

Ellen Nakashima and Spencer S. Hsu, *U.S. Plans to Screen All Who Enter, Leave Country*, Wash. Post, Nov. 3, 2006 ................................................................................... 12

Ellen Nakashima, *Citizens' U.S. Border Crossings Tracked*, Wash. Post, Aug. 20, 2008 ............. 12

Ellen Nakashima, *Terror Suspect List Yields Few Arrests*, Wash. Post, Aug. 25, 2007 ............... 12

Frank James, *Border Control System Targets 9/11 Flaw*, Chicago Trib., Oct. 29, 2003 ............... 11

Frank James, *Muslims in U.S. Raise an Outcry*, Chicago Trib., Jan. 24, 2005 ....................... 11

Gov't Accountability Office, Terrorist Watch List Screening: Efforts to Help Reduce Adverse Effects on the Public, GAO-06-1031 (2006) .......................................................... 6

J. Franklin & R. Bouchard, "Guidebook to the Freedom of Information and Privacy Acts" (2d ed. 1988) ......................................................................................... 1

John W. Gonzalez, *New Land Border System Set to Launch in 2005*, Houston Chron., Oct. 17, 2004 ........................................................................................... 11

Julia Malone, *U.S. Likely to Intensify Tracking of Foreigners*, Atlanta J.-Const., Jan. 22, 2002 .... 11

Kevin Johnson, *Border Incident Angers Muslims*, USA Today, Feb. 9, 2005 ........................... 11

Linda E. Fisher, *Guilt by Expressive Association: Political Profiling, Surveillance and the Privacy of Groups*, 46 Ariz. L. Rev. 621 (2004) ............................................................. 9

Marisa Taylor, *$900 Million Later, U.S. Can't Track Foreign Visitors*, Orlando Sentinel, Sept. 17, 2006 ........................................................................................... 11

Ricardo Alonso-Zaldivar, *Foreign Visitors to U.S. Will Cross Digital Divide*, L.A. Times, Jan. 5, 2004 ........................................................................................... 11

Sarah Milstein, *Taming the Task of Checking for Terrorists' Names*, N.Y. Times, Dec. 30, 2002..... ................................................................................................................................................. 11

Spencer S. Hsu, *Border Computers Vulnerable to Attack*, Wash. Post, Aug. 3, 2007.................... 12

Spencer S. Hsu, *Breach Shows Borders Still Vulnerable*, Wash. Post, June 11, 2007.................... 12

Susan Carroll, *Feds to Test Security-Chip Program at Ariz. Border*, Arizona Republic, Jan. 26, 2005................................................................................................................................................ 11

*Traveler-Ranking System Survives Criticism*, Grand Rapid Press (Mich.), Sept. 23, 2007 ............ 12

**LEGISLATIVE MATERIALS**

S. Rep. No. 98-221.......................................................................................................................... 3

## I.    INTRODUCTION

In this action under the Freedom of Information Act ("FOIA"), Plaintiffs Asian Law Caucus and Electronic Frontier Foundation oppose the government's unlawful effort to shield government records from public review. Plaintiffs do not dispute that Defendant Department of Homeland Security ("DHS") has likely withheld some information properly under the FOIA, but DHS has failed to release all non-exempt information under the law. The agency's attempts to justify the withholding of responsive information under Exemptions 2, 5, and 7(E) of the FOIA are unavailing. Plaintiffs respectfully request entry of an order compelling DHS to process and disclose the withheld records immediately.

## II.    ARGUMENT

### A.    DHS Is Required To Demonstrate a Risk of Circumvention of the Law for All Records Withheld under Exemption 7(E)

The government relies on a handful of thinly reasoned cases to claim that it has no obligation to show a risk of circumvention to withhold law enforcement techniques and procedures under Exemption 7(E). This argument is rooted in *Fisher v. Dep't of Justice*, a case in which the District Court for the District of Columbia held that Exemption 7(E) had been properly invoked where "disclosure of the information within the context of the documents at issue could alert subjects in drug investigations about techniques used to aid the FBI." 772 F. Supp. 7, 12 (D.D.C. 1991).[1] The court noted in passing the bare assertion from a FOIA guidebook that "'non-investigatory' law enforcement records, to the extent that they can be fairly regarded as reflecting techniques or procedures, are now entitled to categorical protection under Exemption 7." 772 F. Supp. at 12 n.9 (quoting J. Franklin & R. Bouchard, "Guidebook to the Freedom of Information and Privacy Acts" § 1.10[6] at 1-157 (2d ed. 1988)). The court in *Smith v. BATF* then relied on *Fisher* to find summarily that "Exemption 7(E) provides categorical protection to information

---

[1] DHS has noted that D.C. Circuit cursorily affirmed *Fisher* at 968 F.2d 92 (D.C. Cir. 1992). Def. Mot. Summ. J. at 7. The D.C. Circuit designated this opinion unpublished, however, so it is "not to be cited as precedent." D.C. Circuit Rule 32.1(b)(1)(A).

related to law enforcement techniques."  977 F. Supp. 496, 501  (D.D.C. 1997). Every other case cited by DHS for the proposition that law enforcement techniques or procedures receive categorical protection adopts this principle with no independent or additional analysis. *See Judicial Watch Inc., v. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004) (citing *Smith* to justify categorical protection); *Peter S. Herrick's Customs & Int'l Trade Newsletter v. Customs and Border Protection*, No. 04-00377, 2006 U.S. Dist. LEXIS 77935, 2006 WL 1826185, at *7 (D.D.C. July 20, 2006) (citing *Judicial Watch* for the same) (Exhibit A to Supplemental Declaration of Marcia Hofmann (hereafter "Supp. Hofmann Decl.")); *Keys v. Dep't of Homeland Security*, 510 F. Supp. 2d 121, 129 (D.D. C. 2007) (citing *Judicial Watch* and *Peter S. Herrick* for the same).

Regardless, as Plaintiffs explained in their opening brief, this Court has required the government to satisfy the "circumvention" requirement to withhold techniques or procedures. *Feshbach v. SEC*, 5 F. Supp. 2d 774, 786 (N.D. Cal. 1997); *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1035 (N.D. Cal. 2005). Other courts throughout the country have reached the same conclusion, including the District Court for the District of Columbia and the D.C. Circuit.[2] Thus, case

_____

[2] *See, e.g., PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250 (D.C. Cir. 1993) ("[U]nder both the (b)(2) and the (b)(7)(E) exemptions, the agency must establish that releasing the withheld materials would risk circumvention of the law"); *Billington v. Dep't of Justice*, 69 F. Supp. 2d 128, 140 (D.D.C. 1999) (The (7)(E) analysis "requires a defendant to show that disclosure would frustrate enforcement of the law"); *aff'd*, 233 F.3d 581, 583 (D.C. Cir. 2000) ("We have nothing to add to the district court's sound reasoning" with respect to 7(E)); *Boyd v. BATF*, 570 F. Supp. 2d 156, 157 (D.D.C. 2008) ("Information pertaining to law enforcement techniques and procedures properly is withheld under Exemption 7(E) where disclosure reasonably could lead to circumvention of laws or regulations"); *Hidalgo v. FBI*, 541 F. Supp. 2d 250, 253 (D.D.C. 2008) ("[T]he standard under Exemptions [high] 2 and 7(E) is substantially the same: whether 'disclosure significantly risks circumvention of agency regulations or statutes'") (citing *Crooker v. BATF*, 670 F.2d 1051, 1074 (D.C. Cir. 1981) (en banc)); *Juda v. U.S. Customs Service*, No. 98-0522, 1999 U.S. Dist. LEXIS 12536, at *25 (D.D.C. Aug. 2, 1999) ("For Exemption 7(E) to be applied . . . requires that release of the information 'could reasonably be expected to risk circumvention of the law'") (Supp. Hofmann Decl. Ex. B), *rev'd on other grounds*, No. 99-5333, 2000 U.S. App. LEXIS 17985, 2000 WL 1093326  (D.C. Cir. June 19, 2000); *Barkett v. Dep't of Justice*, No. 86-2029, 1989 U.S. Dist. LEXIS 7984, 1989 WL 930993 at *4 (D.D.C. July 18, 1989) (withholding of law enforcement technique proper under 7(E) where disclosure would "assist drug violators in evading detection and apprehension, thereby circumventing federal drug laws") (Supp. Hofmann Decl. Ex. C); *Unidad Latina en Accion v. Dep't of Homeland Security*, No. 07-1224, 2008 U.S. Dist. LEXIS 76033, 2008 WL 4414195, at *4 (D. Conn. Sept. 30, 2008) ("For Exemption (b)(7)(E) to apply, this Court must find that the information DHS seeks to withhold . . . could reasonably be expected to risk circumvention of the law.") (Supp. Hofmann Decl. Ex. D); *Cozen O'Connor v. Dep't of the*

1    precedent supports Plaintiffs' position.

2         As DHS points out, Congress amended 5 U.S.C. § 552(b)(7)(E) in 1986 to expand the

3    language of the exemption to include not only law enforcement materials that "would disclose

4    techniques and procedures for law enforcement investigations or prosecutions," but added

5    "guidelines for law enforcement investigations or prosecutions if [their] disclosure could

6    reasonably be expected to risk circumvention of the law." DHS argues that the "risk of

7    circumvention" language was intended to apply only to "guidelines," and not "techniques and

8    procedures," relying on the plain language of the statute and the legislative history's explanation

9    that the amendment was meant to reverse the holding in *United States v. Jordan*, 591 F.2d 771

10   (D.C. Cir. 1978), which had "den[ied] protection for prosecutorial discretion guidelines under the

11   (b)(2) exemption." S. Rep. No. 98-221, at 25 (Ex. A to Decl. of John Coleman in Supp. of Def.

12   Mot. for Summ J. and in Opp'n to Pl. Cross Mot. for Summ. J. (Dkt. No. 25-2)).  These arguments

13   are unpersuasive.

14        The legislative history shows that Congress amended Exemption 7(E) with the intention

15   that "agencies and courts will consider the danger of creating 'secret law' together with the

16   potential for aiding lawbreakers to avoid detection or prosecution." S. Rep. No. 98-221, at 25. In so

17   doing, Congress was guided by the "circumvention of the law" standard that the D.C. Circuit

18   established in its en banc decision in *Crooker v. BATF*, 670 F.2d 1051 (D.C. Cir. 1981) (en banc)

19   (interpreting Exemption 2)." *Id*. *Crooker* itself was not limited to "guidelines," but broadly held

20   that if any "*document* for which disclosure is sought meets the test of 'predominant internality,'

21   and if disclosure significantly risks circumvention of agency regulations or statutes, then

22   Exemption 2 exempts the material from mandatory disclosure." *Crooker*, 670 F.2d at 1074

23   (emphasis added).[3] It makes little sense to limit Exemption 7(E)'s "circumvention" requirement to

24
_____

25   *Treasury*, 570 F. Supp. 2d 749, 785 (E.D. Pa. 2008) ("Exemption 7(E) covers law enforcement
     records or information disclosing techniques, procedures and guidelines…that would enable

26   unauthorized persons to circumvent the law.").

27   [3] *Crooker* goes on to state, "We add the word 'significantly' to stress the narrow scope of our
     construction of Exemption 2; in all cases in which the Government relies on Exemption 2, it
     remains the Government's burden to prove the 'significant risk.'" *Id*. It makes little sense that

28   Congress would pattern the 1986 amendment after the *Crooker* holding, which stressed the

a single category of documents when it was modeled on language significantly more expansive. Moreover, requiring the government to demonstrate a risk of circumvention for techniques, procedures, and guidelines ensures that disclosure turns on the purpose behind the law enforcement exemption rather than the form of the document in which withheld information was maintained.[4] Thus, DHS's argument must fail.

**B.     DHS Has Failed to Demonstrate That Disclosure of Records Withheld Pursuant to Exemptions "High 2" or 7(E) Would Risk Circumvention of the Law**

DHS has failed to meet its burden of proof with respect to any of the four categories of information described by Plaintiffs as examples of improper withholdings: (1) the names of databases, names of database reports and modules, and information relating to the use of government watchlists;[5] (2) "specific topics for questioning" individuals attempting to enter the United States; (3) procedures for coordination with other law enforcement agencies; and (4) information and records concerning an "Interim Guidance for Border Search/Examination of Documents, Paper and Electronic Information." Plaintiffs are accordingly entitled to summary judgment.

*Names of specific database reports and modules.* The government contends that the disclosure of records describing which databases or reports are used in particular circumstances

---

narrowness of the exemption's scope, yet apply that restriction to only guidelines and not techniques or procedures.

[4] Finally, if Congress clearly intended the 1986 amendment to be wholly unrelated to techniques and procedures, as DHS contends, there would be no reason for Congress to add the new language to subsection (E). Indeed, if Congress intended the 1986 amendment to be independent of the existing language of 7(E), it would likely have created a new subsection of 5 U.S.C. § 552(b)(7) devoted exclusively to guidelines. Thus, the structure of the statute suggests that Congress intended the 1986 amendments to modify "techniques and procedures" as it added "guidelines" to exempt categories of materials.

[5] Plaintiffs had analyzed together the government's withholding under "high" 2 and 7(E) of records described in the Vaughn index as including the "names of databases," "names of database reports" and "names of database modules," and "information related to the operation of government watchlists." Pl. Mot. Summ. J. at 10. Plaintiffs take exception to DHS's claim that the grouping together of these categories was "misleading." Nevertheless, because the government has defended these withholdings separately, Plaintiffs will examine these categories individually in this reply brief.

"could lead to circumvention of CBP law enforcement efforts" or "facilitate improper access to the database." Def. Opp'n and Reply at 5.[6] The first explanation is wholly conclusory, while the second explanation is completely unsupported by the government's citation to *Boyd v. BATF*, 496 F. Supp. 2d 167, 171 (D.D.C. 2007). In *Boyd*, the court exempted from disclosure information that provided significantly greater detail on a computer system than the mere names of database reports or modules; there, the withheld records included information that "identif[ied] the terminal from which a query was accomplished by a terminal ID and a logical unit ID to show its mainframe connection," the "software program mapping code," and "routing codes within the program that allows the query to move from screen to screen." *Id*.

*Information related to the operation of government watch lists.* The government contends that despite public knowledge of CBP's use of watchlists, the release of information concerning the particular circumstances in which watchlists are used would risk circumvention of the law. Yet DHS has not explained how the knowledge that a particular watchlist is used in a particular circumstance could enable individuals or organizations to evade the law, since the content of CBP watchlists remains secret; a criminal organization seeking to send its members into the United States, for instance, would not know which of its members would be able to evade CBP screening, even if it knew that the agency used a watchlist in a particular fashion.

Furthermore, the Ninth Circuit has previously rejected the government's attempt to withhold information about "routine and generally known" investigative techniques with the claim that the precise facts behind the use of the techniques are exempt. In *Rosenfeld v. Dep't of Justice*, the Ninth Circuit ordered the FBI to release records concerning the use of a pretext phone call, finding that the practice was "an investigative technique generally known to the public." 57 F.3d 803, 815 (9th Cir. 1995). The court found unpersuasive the government's argument that the technique at issue was not just the use of a pretext phone call, but the use of a particular individual as the pretext, stating: "If we were to follow such reasoning, the government could withhold

---

[6] Defendant quotes a statement purportedly from the Vaughn index description of Document 5 to explain the alleged harm from disclosure of the names of database reports and modules. Def. Opp'n and Reply at 5. In fact, the statement quoted appears nowhere in the Vaughn index description of Document 5.

1  information under Exemption 7(E) under any circumstances, no matter how obvious the

2  investigative practice at issue, simply by saying that the 'investigative technique' at issue is not the

3  practice but the application of the practice to the particular facts underlying that FOIA request." *Id.*

4      Similarly, DHS improperly withheld records on the operation of government watchlists,

5  which is also a generally known investigative practice. *See*, *e.g.*, Gov't Accountability Office,

6  Terrorist Watch List Screening: Efforts to Help Reduce Adverse Effects on the Public, GAO-06-

7  1031 (Sept. 26, 2006). To the extent that the Court finds the government's description of

8  "information related to the operation of government watchlists" to be insufficiently detailed, the

9  Court's in camera review should resolve this issue in favor of disclosure. *Cf. Gordon*, 388 F. Supp.

10 2d at 1036-37 (ordering the FBI to disclose certain records regarding the agency's use of

11 watchlists, such as the legal basis for detaining a person on the list, while exempting other records

12 from disclosure).

13     *Names of databases.* Contrary to DHS's argument that the Privacy Act does not require the

14 government to reveal which database is used in a particular circumstance, who is responsible for

15 using it, or how it is used, Def. Opp'n and Reply at 6, these "details" are, in fact, subject to

16 disclosure under the law.  The Privacy Act mandates public disclosure of "each routine use" of

17 records in a "system of records," the categories of users, the purpose of each such use, and the

18 policies and practices of the agency regarding storage, retrievability, access, and retention of

19 records.  5 U.S.C. § 552a(e)(4)(D) and (E).  Therefore, DHS has failed to show any basis for

20 withholding the "names of databases" under exemptions "high 2" or 7(E).

21     The government cites *Cozen O'Connor v. Dep't of the Treasury*, 570 F. Supp. 2d 749, 786

22 (E.D. Pa. 2008) in support of its position.  That court's bare-bones explanation of the potential

23 harm from disclosure of government databases is unpersuasive, particularly when the court did not

24 have the benefit of adversarial briefing on whether the database names were properly withheld

25 under 7(E), since the plaintiffs did not contest the withholding under that exemption.  *Id*.  *See also*

26 *El Badrawi v. Dep't of Homeland Security*, No. 07-372, 2008 U.S. Dist. LEXIS 76038, 2008 WL

27 4480363 at *21 (D. Conn. Sept. 30, 2008) (rejecting CBP's "boilerplate warnings about

28 'jeopardizing' databases") (Ex. 5 to Decl. of Marcia Hofmann in Opp'n to Def. Mot. For Summ. J.

-6-

1    and In Support of Pl. Cross Mot. for Summ. J. (hereafter "Hofmann Decl.") (Dkt. No. 21).

2          Unable to point to a specific plausible harm that could result from disclosing the names of

3    databases, DHS resorts to invoking the controversial "mosaic theory" to justify nondisclosure.

4    According to this theory, agencies may withhold seemingly innocuous information because "bits

5    and pieces of data may aid in piecing together bits of other information even when the individual

6    piece is not of obvious importance in itself." *See, e.g.*, *C.I.A. v. Sims*, 471 U.S. 159, 178 (1985)

7    (withholding under Exemption 3 CIA records that would disclose intelligence sources based on the

8    CIA Director's specific statutory mandate to protect intelligence sources) (internal citations

9    omitted).  To be sure, information that the government seeks to withhold should not be viewed in

10   isolation.  Yet DHS must still meet its statutory burden of demonstrating that disclosure would risk

11   circumvention of law.   Speculative recitals of the potential for "mosaic" harms should not

12   substitute for specific, plausible explanations of the harm that an agency claims would result from

13   disclosure.  *El Badrawi,* 2008 WL 4480363 at *28 (holding that government had not provided

14   enough information to show that instant case implicated a mosaic scenario to justify exemption 7

15   withholdings); *see also Detroit Free Press v. Ashcroft*, 303 F.3d 681, 709 (6th Cir. 2002) (rejecting

16   government's use of mosaic theory to close "special interest" deportation hearings as overly

17   speculative and as inviting limitless deference to government's national security claims).[7]  Here,

18   DHS has not shown how disclosing the names of databases could enable would-be lawbreakers to

19   combine that information with other publicly available information to circumvent the law.

20          This Court has applied a more searching review to examine agency claims that

21   circumvention of the law would result from disclosure under 7(E), even in the national security

22   context.  In *Gerstein v. Dep't of Justice*, No. 03-04893 RMW, 2005 U.S. Dist. LEXIS 41276 (N.D.

23   Cal. Sept. 30, 2005) (Hofmann Decl. Ex. 4), a journalist sought records concerning the

24   government's issuance of delayed-notice search and seizure warrants issued under Section 213 of

25   _____

26   [7] *See also* David E. Pozen, Note, *The Mosaic Theory, National Security, and the Freedom of Information Act,* 115 Yale L.J. 628, 672-75 (2005) (arguing that the "practical unfalsifiability of

27   highly speculative mosaic claims" makes the theory "ripe for agency opportunism and abuse," and advocating that mosaic arguments should not be approved without adequate specificity, support

28   and plausibility).

the Patriot Act.  The agency claimed that revealing the statistical distribution of warrants issued by particular U.S. attorneys would enable criminals to direct their activities toward "soft" jurisdictions.  *Id*. at *39.  This Court ordered disclosure, however, finding that the predictive value of the 60 warrants issued was "exceedingly low" and that the government had provided no evidence that delayed-notice warrants were "particularly feared or effective."  *Id*. at *41 (noting, *inter alia*, that the government's declarant had no special expertise in criminal psychology to support its claim that criminals would plan illegal activity based on U.S. attorneys' use of such warrants).[8]  For the same reasons, this Court should conclude that DHS has failed to meet its statutory burden of justifying the withholding of records revealing names of databases, database reports and modules, and information on the operation of government watchlists.

   *Specific topics for questioning*.[9]  DHS improperly withheld information on "specific topics for questioning" individuals seeking to enter the United States to the extent that such topics fall within Plaintiffs' request for information on the "questioning of travelers regarding political views, religious practices, and other activities potentially covered by the First Amendment." Letter from Shirin Sinnar, Staff Attorney, Asian Law Caucus, and Marcia Hofmann, Staff Attorney, Electronic

---

[8] Moreover, the cases DHS cites as applying the mosaic theory do not, in fact, support its use here. The U.S. Supreme Court and Ninth Circuit have thus far endorsed the mosaic theory to support FOIA withholdings only in the exceptional context of national security claims made under Exemption 3 by the Central Intelligence Agency, which is entitled to particular deference by courts.  *See Sims*, 471 U.S. at 178; *Hunt v. C.I.A.*, 981 F.2d 1116, 1119-20 (9th Cir. 1992) (finding that CIA records enjoyed "near-blanket FOIA exemption" and permitting agency to rely on mosaic theory); *Berman v. C.I.A.*, 501 F.3d 1136, 1143 (9th Cir. 2007) (same).  In *Ctr. for Nat. Sec. Studies v. Dep't of Justice*, 331 F.3d 918, 928-29 (D.C. Cir. 2003), the D.C. Circuit applied the mosaic theory under Exemption 7(A) to the singular context of the government's September 11 terrorism investigation, finding that disclosure of the complete list of post-9/11 detainees would interfere with that investigation, and emphasizing that the plaintiffs did not request "'bits and pieces' of information, but rather the names of every single individual detained in the course of the government's terrorism investigation."  *Id*. at 929.  In *Coastal Delivery Corp. v. U.S. Customs Serv.*, 272 F. Supp. 2d 958, 964-65 (C.D. Cal. 2003), the court referenced the mosaic theory but relied on the government's identification of *specific* information that potential smugglers could combine with withheld records to circumvent the law.

[9] In their opening brief, *see* Pl. Cross Mot. Summ. J. at 12 n. 8, Plaintiffs inadvertently omitted two additional documents that are described in the Vaughn Index as including redactions for "specific topics for questioning" individuals: Documents 8 (Bates Nos. 284-285) and 17 (Bates Nos. 556-574). Those documents are Exhibit E to the Supplemental Declaration of Marcia Hofmann.

Frontier Foundation, to U.S. Customs and Border Protection, Oct. 31, 2007 (Ex. B to Decl. of Shari Suzuki in Support of Def. Mot. for Summ. J. (hereafter "Suzuki Decl.") (Dkt. No. 19-1)).  Plaintiffs characterized their request for this particular information as "presumably . . . limited" because they expect that CBP does not engage in extensive interrogations on the First Amendment-protected activities of travelers, as such questioning would undoubtedly raise serious constitutional concerns.[10] The only question before the Court is whether the material withheld from Plaintiffs by the government falls within an exemption to the FOIA, not whether theoretical future FOIA requests could reveal "the entire universe of questions used by CBP." See Def. Opp'n and Reply at 9.

Contrary to DHS's characterization, Plaintiffs do not seek release of the actual questions used during border inspection, but a subset of *topics* for questioning.  DHS has not even attempted to demonstrate that the release of information at this level of generality would risk circumvention of the law. *Cf. Perrone v. FBI*, 908 F. Supp. 24, 28 (D.D.C. 1995) (protecting from disclosure "the exact questions to be asked and their sequence" on a polygraph exam).  Accordingly, this Court should deny DHS's attempt to withhold the requested information on the questioning of individuals regarding political views, religious practices, and other activities potentially covered by the First Amendment.

*Procedures for coordination with other law enforcement agencies.* DHS claims, for the first

---

[10] Indeed, the Ninth Circuit has closely scrutinized law enforcement agency exemption claims where withheld records concern the routine monitoring of individuals' lawful political activities. *See Rosenfeld*, 57 F.3d at 810-11 (ordering the disclosure of FBI files on U.C. Berkeley-linked Free Speech Movement where the agency's "law enforcement purpose," a required element of Exemption 7, "disintegrated" as the agency pursued routine monitoring of activists for improper purposes). In *Tabbaa v. Chertoff*, 509 F.3d 89, 92, 102 (2d Cir. 2007), the Second Circuit held that detaining, fingerprinting, and interrogating returning U.S. citizens regarding their attendance at a religious conference overseas significantly burdened these individuals' First Amendment right to free association, although the court found that no rights were violated because the government had specific intelligence information regarding the presence of suspected terrorists at that conference. No court has yet ruled on whether CBP questioning of individuals on political views, religious practices, and other beliefs or lawful expressive activities in the absence of such specific intelligence information would violate constitutional rights.  *See* Linda E. Fisher, *Guilt by Expressive Association: Political Profiling, Surveillance and the Privacy of Groups*, 46 Ariz. L. Rev. 621 (2004) (arguing that surveillance of U.S. persons based on First Amendment conduct without reasonable suspicion abridges fundamental constitutional rights).

1    time in its reply, that disclosure of the procedures for coordination with other law enforcement

2    agencies risks circumvention of the law because it would reveal what "triggers an alert" to another

3    law enforcement agency, enabling individuals to avoid those triggers.  Def. Opp'n and Reply at 9.

4    The government makes no argument that individuals seeking to evade the law change their

5    behavior based on CBP's coordination with other law enforcement agencies.  *See Gerstein*, 2005

6    U.S. Dist. LEXIS 41276 at *41.  Moreover, DHS's claim that disclosure of a procedure risks

7    circumvention of the law because it permits people to know what triggers the procedure could be

8    used to justify, after the fact, the withholding of *any* law enforcement procedure, and does not meet

9    the agency's burden of establishing that these records are properly exempt from disclosure.

10       The cases cited by DHS in support of its withholding are unpersuasive.  *Morley v. C.I.A.*,

11   508 F.3d 1108, 1128-29 (D.C. Cir. 2007), upheld the CIA's withholding of information on CIA

12   security clearance techniques altogether without separately considering the agency's statement in a

13   declaration that withheld records would also "reveal techniques and procedures used by law

14   enforcement agencies in coordination with CIA."  *Id*.  The cursory finding in *Cozen O'Connor*, 570

15   F. Supp. 2d at 786, is unpersuasive, particularly because plaintiff there did not contest the

16   government's 7(E) exemption.  Finally, this Court in *Gordon*, 388 F. Supp. 2d at 1035-36, did not

17   rule on coordination between law enforcement agencies, and said nothing about whether withheld

18   records on the "dissemination of watchlists" even involved multiple agencies.

19       *"Interim Guidance for Border Search/Examination of Documents, Paper and Electronic*

20   *Information."*  DHS's statement that redactions in the set of documents concerning the agency's

21   interim border search policy concern "the scope and focus of certain law enforcement techniques"

22   the release of which "would permit persons to devise strategies designed to circumvent the

23   examination and inspection procedures developed by CBP" merely recites the statutory language

24   without demonstrating a particular risk of circumvention. Given the agency's statement that it

25   cannot further describe these redactions without revealing what it seeks to protect, this Court

26   should assess whether DHS has met its burden of proof through in camera review.

27

28

**C.      DHS Has Failed to Justify Its Exemption "Low 2" Withholdings**

The FOIA specifically places the burden on the government to show that it has properly withheld a record under the FOIA, as the government concedes. Def. Mot. for Summ. J. at 5 (citing 5 U.S.C. § 552(a)(4)(B) and noting that "[t]he government bears the burden of justifying non-disclosure.")  Yet DHS attempts to shift this burden to Plaintiffs by complaining that they "have not explained why" the database names are "of genuine public interest." Def. Opp'n and Reply at 14.  Because it is DHS's burden to show that the records fall within the scope of "low 2," it is the agency's obligation to show that the material is *not* of genuine public interest, not the requester's obligation to show that it is.

In any event, the genuine public interest in CBP's collection of information about travelers is clear. As Plaintiffs noted in their opening brief, DHS has invoked "low 2" to redact identifying information that "would reveal the location of information stored on an internal network" where the Tucson Field Office once stored information from interviews of "persons of interest" or "suspected terrorists." Shari Suzuki Decl. ¶ 20; Hofmann Decl. Ex. 8 (Bates No. 575).[11] DHS has also claimed this exemption to withhold the name of a defunct database that was used to screen suspected terrorists entering or leaving the United States, contained "photos/documents" related to those individuals, and was "checked for subjects at airports." Hofmann Decl. Ex. 8 (Bates No. 578). First, the government's use of information systems like these to track travelers has been a matter of tremendous public interest since 9/11, particularly in the context of border crossings.[12]

---

[11] The actual record on which the redaction appears reads: "In the months following the 9/11 attacks, the Field Analysis Specialist Unit of the Tucson Field Office implemented procedures to refine the targeting and interviewing of Persons of Interest (POIs) and the collection of the data from those interviews in a database [redacted]." Bates No. 575.

[12] For a small sampling of the extensive news media coverage throughout the country on this issue, *see, e.g.,* Julia Malone, *U.S. Likely to Intensify Tracking of Foreigners*, Atlanta J.-Const., Jan. 22, 2002, at 4A; Sarah Milstein, *Taming the Task of Checking for Terrorists' Names*, N.Y. Times, Dec. 30, 2002, at C4; Frank James, *Border Control System Targets 9/11 Flaw*, Chicago Trib., Oct. 29, 2003, at C16; Ricardo Alonso-Zaldivar, *Foreign Visitors to U.S. Will Cross Digital Divide*, L.A. Times, Jan. 5, 2004, at A1; John W. Gonzalez, *New Land Border System Set to Launch in 2005*, Houston Chron., Oct. 17, 2004, at B11; Frank James, *Muslims in U.S. Raise an Outcry*, Chicago Trib., Jan. 24, 2005 at 1; Susan Carroll, *Feds to Test Security-Chip Program at Ariz. Border*, Arizona Republic, Jan. 26, 2005, at 1A; Kevin Johnson, *Border Incident Angers Muslims*, USA Today, Feb. 9, 2005, at 3A; Marisa Taylor, *$900 Million Later, U.S. Can't Track Foreign Visitors*,

Numerous editorials have expressed concern over the civil liberties implications of CBP's use and collection of such data.[13]   Therefore, CBP's creation and use of databases to collect information about people crossing the border is a well-documented matter of genuine public interest.

Second, these two databases appear to have been "systems of records" under the Privacy Act, defined as "group[s] of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(5).   DHS does not deny that these systems were subject to Privacy Act requirements and protections. The public has a genuine interest in knowing whether CBP complied with the law with respect to its operation of these systems of records. The fact that the databases are no longer in use is irrelevant; the public's statutory right to obtain information through the FOIA does not somehow expire when the information becomes untimely. The public is entitled to know whether CBP maintained now-defunct databases in compliance with federal law just as much as it is entitled to know whether databases currently in use are maintained in compliance with federal law.   As such, DHS has improperly withheld this information under "low 2."

**D.**   **DHS Has Improperly Withheld Agency Records Under Exemption 5**

DHS has also failed to satisfy its burden to show that it properly withheld information under Exemption 5. First, DHS has withheld handwritten notes made by a CBP employee on an interim policy. Hofmann Decl. Ex. 8 (Bates Nos. 625-626); Suzuki Decl. ¶¶ 25-26. DHS repeats its bald claim that the notes are predecisional because they were intended "to assist in later

---

Orlando Sentinel, Sept. 17, 2006, at A8; Ellen Nakashima and Spencer S. Hsu, *U.S. Plans to Screen All Who Enter, Leave Country*, Wash. Post, Nov. 3, 2006, at A18; Spencer S. Hsu, *Breach Shows Borders Still Vulnerable*, Wash. Post, June 11, 2007, at A01; Spencer S. Hsu, *Border Computers Vulnerable to Attack*, Wash. Post, Aug. 3, 2007, at A02; Ellen Nakashima, *Terror Suspect List Yields Few Arrests*, Wash. Post, Aug. 25, 2007, at A01; *Traveler-Ranking System Survives Criticism*, Grand Rapid Press (Mich.), Sept. 23, 2007, at B6; Ellen Nakashima*, Citizens' U.S. Border Crossings Tracked*, Wash. Post, Aug. 20, 2008, at A01; *Feds Track Citizens' Border Crossings*, Grand Rapid Press (Mich.), Aug. 21, 2008, at A10.

[13] *See*, *e.g.*, Editorial, *Data Does Cross Line on Privacy*, Detroit Free Press, Aug. 21, 2008, at 18; Bruce Schneier, Op-Ed, *Fingerprinting Visitors Won't Offer Security*, Newsday (N.Y.), Jan. 14, 2004, at A29; Editorial, *Targeting Travelers*, Balt. Sun-Trib., Oct. 1, 2007, at 8A; Editorial and Comment, *Keeping Score*, Columbus Dispatch (Ohio), Dec. 6, 2006, at 10A.

deliberations," Suzuki Decl. ¶ 26, but does not address the fact that the Ninth Circuit requires an agency to "*identify a specific decision* to which the document is predecisional" in order to properly withhold information under Exemption 5. *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1094 (9th Cir. 1997) (emphasis added); *see also Assembly of the State of Cal. v. Assembly Comm. on Elections*, 968 F.2d 916, 921 (9th Cir. 1992); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980). DHS cannot make such a showing, and so may not withhold the notes under the deliberative process privilege. On the contrary, as this Court has made clear, "[r]etrospective evaluations of prior decisions must be segregated and released." *United States v. Rozet*, 183 F.R.D. 662, 666 (N.D. Cal. 1998) (citing *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)).[14]

DHS also withholds information that "reflects deliberations and potential courses of action that were discussed as [CBP] moved towards a decision on drafting a standard operating procedure." Hofmann Decl. Ex. 8 (Bates Nos. 679); Suzuki Decl. ¶¶ 25-26. The agency contends that Plaintiffs' citation of *Coastal States Gas Corp.*, 617 F.2d at 866, is misplaced because that case concerned legal memoranda that effectively created binding agency policy, and were not recommendations or suggestions about agency policy. Def. Opp'n and Reply at 16. Regardless of the form of the decision at issue, it is the agency's burden to establish "the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process." *Rozet,* 183 F.R.D. at 666 (citing *Strang v. Collyer*, 710 F. Supp. 9, 11 (D.D.C. 1989), *aff'd*, 899 F.2d 1268 (D.C. Cir. 1990). DHS has still not provided enough information in its *Vaughn* index or the Suzuki Declaration to determine whether the deliberations in the email were ultimately adopted by the agency as its official position on the standard operating procedure, or if the deliberations were ultimately used by CBP in its dealings with the public.  As such, DHS has

---

[14] DHS also points out that the notes were made about "interim" procedures, apparently suggesting that they were not final policies used in the agency's dealings with the public. Def. Opp'n and Reply at 16. On the other hand, DHS complains that the same procedures should not be presumed to have been "superceded" by later guidelines because the subsequent document "doesn't foreclose the possibility that specific operational procedures not directly addressed by [the later document] *remain in effect* or may be adopted again in the future." Def. Opp'n and Reply at 10 (emphasis added).  DHS cannot have it both ways.

1  failed to satisfy its burden and cannot sustain its invocation of Exemption 5.

2  **E.     DHS Has Failed to Segregate Exempt Materials From Non-Exempt Material,
3          as the Freedom of Information Act Requires**

4          DHS has not satisfied its burden of showing that it has separated all reasonably segregable

5  non-exempt potions of records from exempt material. To satisfy its burden, an agency is "required

6  to provide the court with its *reasons*—as opposed to its simple conclusion—for its inability to

7  segregate non-exempt portions of the documents, and also to provide the court with a description of

8  'what proportion of the information in a document is non-exempt, and how that material is

9  dispersed throughout the document.'" *Lawyers' Comm. For Civil Rights of San Francisco Bay

10 Area v. Dep't of the Treasury*, No. 07-2590 PJH, 2008 U.S. Dist. LEXIS 87624, 2008 WL 448285

11 at *13 (N.D. Cal. Sept. 30, 2008) (quoting *Mead Data Cent., Inc. v. Dep't of the Air Force*, 556

12 F.2d 424, 261 (D.C. Cir. 1977) (emphasis in original) (Supp. Hofmann Decl. Ex. F).

13         Here, the government provides only a two-paragraph explanation of segregability in 43

14 documents, including 28 pages withheld in full.   Suzuki Decl. ¶¶ 31-32. These two paragraphs

15 consist of sweeping, conclusory statements such as "I have reviewed the documents line-by-line, to

16 identify information exempt from disclosure or for which a discretionary waiver of exemption

17 could apply, and I am satisfied that all reasonably segregable portions of the relevant records have

18 been released to the Plaintiffs in this matter." Suzuki Decl. ¶ 31. Such justifications fall far short of

19 the specificity the agency is required to provide. *Bay Area Lawyers Alliance for Nuclear Arms

20 Control v. Dep't of State*, 818 F. Supp. 1291, 1300 (N.D. Cal. 1992) (finding boilerplate,

21 conclusory assertions inadequate to permit the Court to make finding on segregability); *L.A. Times

22 Communs. LLC v. Dep't of Labor*, 483 F. Supp. 2d 975, 986 (C.D. Cal. 2007) ("Agencies may

23 meet this burden by describing through affidavit, *in a non-conclusory manner*, why such

24 information is not reasonably segregable") (emphasis added). Thus, DHS has not satisfied its

25 burden.

26

27

28

1

2      **III.     CONCLUSION**

3             For the reasons stated in their opening papers and above, Plaintiffs respectfully request that

4      DHS's motion for summary judgment be denied, and that Plaintiffs' cross motion for summary

5      judgment be granted.

6      DATED:  November 12, 2008

7                                                          _/s/ Marcia Hofmann_____
                                                         Marcia Hofmann, Esq.
8                                                        ELECTRONIC FRONTIER FOUNDATION
                                                         454 Shotwell Street
9                                                        San Francisco, CA  94110
                                                         Telephone:  (415) 436-9333
10                                                       Facsimile:  (415) 436-9993

11                                                       Shirin Sinnar, Esq.
                                                .        ASIAN LAW CAUCUS
12                                                       939 Market St., Suite 201
                                                         San Francisco, CA 94103
13                                                       Telephone: (415) 896-1701
                                                         Facsimile: (415) 896-1702
14
                                                          Attorneys for Plaintiffs
15                                                        ASIAN LAW CAUCUS AND ELECTRONIC
                                                          FRONTIER FOUNDATION
16

17

18

19

20

21

22

23

24

25

26

27

28