IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASIAN LAW CAUCUS and ELECTRONIC FRONTIER FOUNDATION,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>    Defendant. | No. C 08-00842 CW<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT |

Defendant Department of Homeland Security (DHS) filed a motion for summary judgment. Plaintiffs Asian Law Caucus and Electronic Frontier Foundation opposed the motion and filed a cross motion for summary judgment. Having considered all of the parties' papers, the Court hereby grants Defendant's motion for summary judgment and denies Plaintiffs' cross-motion for summary judgment.

BACKGROUND

Plaintiffs Asian Law Caucus (ALC) and Electronic Frontier Foundation (EFF) filed this suit under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. They seek records concerning Customs

and Border Protection's (CBP)[1] policies and procedures on the questioning, search and inspection of travelers entering or returning to the United States at ports of entry.

On October 31, 2007, Plaintiffs submitted a FOIA request seeking disclosure of the following records generated from September 11, 2001 to the present:

(1) Policies and procedures on the questioning of travelers, specifically as follows:

  (a) Policies and procedures on the questioning of travelers regarding political views, religious practices, and other activities potentially covered by the First Amendment;

  (b) Policies and procedures for responding to a traveler's refusal to answer questions;

  (c) Policies and procedures for permitting a traveler to access legal counsel or invoke a right to remain silent during inspection at the border; and

(2) Policies and procedures on inspections and searches of travelers' property, specifically as follows:

  (a) Policies and procedures on the photocopying, reproduction, and retention of written materials obtained through the border searches, including documents that CBP officers have found not to violate the law;

  (b) Policies and procedures on conducting searches and duplicating files from laptop computers, MP3 players, digital cameras, cell phones, and other electronic devices;

  (c) Copies of the two 1986 Customs Directives, <u>Review, Copying and Seizure of Documents</u> (Customs Directives 3300-04) and <u>Restrictions on Importation of Seditious Matter</u> (Customs Directive 2210-01), and any amendments or revisions to these materials;

  (d) Policies and procedures on the protection of confidential information in travelers' possession, such as information covered by trade secrets, attorney-client privilege, health privacy laws, or other legal protection.

Suzuki Dec., Ex. B. Defendant acknowledged receipt of Plaintiffs'

---

[1] CBP is a component of the Department of Homeland Security (DHS).

2

request and stated that "due to the broad and expansive nature of your request and the 'voluminous' amount of records that must be located, compiled, and reviewed, a time extension is required." Suzuki Dec., Ex. C.  Defendant noted that it would "disseminate the information you requested as quickly as possible."  Id.  Plaintiffs filed the instant lawsuit on February 7, 2008, seeking an order to compel Defendant to process the requested records.  Docket no. 1.

After Plaintiffs filed their FOIA claim, the parties entered into an agreement, under which Defendant produced an initial release of responsive records on June 26, 2008, and a final release of responsive records on July 30, 2008.  After reviewing the records, Plaintiffs agreed to limit their challenge.  Plaintiffs do not challenge the adequacy of Defendant's search, or the agency's designation of any material as non-responsive to Plaintiffs' request.  Suzuki Dec., Ex. F.  However, Plaintiffs continue to challenge exemptions made pursuant to 5 U.S.C. § 552(b)(2), (b)(5) and (b)(7)(E) in the following documents:

(1) Responding to Potential Terrorists Seeking Entry into the United States, CBP Directive No. 3340-021B (Bates No. 135-159)

(2) Responding to Potential Terrorists Seeking Entry into the United States (Prior Version), CBP Directive No. 3340-021A (Bates No. 160-175);

(3) Standard Operating Procedures of Regional Ports regarding Responding to Potential Terrorists Seeking Entry into the United States (Bates No. 238-248, 269-282, 498-515, 517-521);

(4) Port of Buffalo, Weekly Muster dated December 12, 2007 (Bates No. 191-192)

(5) Los Angeles Field Office, Weekly Muster dated March 12, 2007 (Bates No. 284-85);

(6) San Francisco Field Office, Guidance on Pornographic Materials (Bates No. 516);

(7) Tucson Field Office Memoranda (Bates No. 549-580);

(8) Documents Relating to Border Search/Examination of Documents, Papers, and Electronic Information (Bates No. 596-661); and

(9) Documents Relating to a Concept of Operations regarding document and electronic media screening (Bates No. 662-689).

Upon review of the moving papers, and in light of the nature of Defendant's claimed exemptions, the Court directed Defendant to produce all withheld records for the Court's review. See docket no. 26.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the

4

outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## The Freedom of Information Act

"FOIA entitles private citizens to access government records." Minier v. Central Intelligence Agency, 88 F.3d 796, 800 (9th Cir. 1996). "The Supreme Court has interpreted the disclosure provisions broadly, noting that the act was animated by a 'philosophy of full agency disclosure.'" Lion Raisins v. U.S. Dep't of Agriculture, 354 F.3d 1072, 1079 (9th Cir. 2004) (quoting John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989). However, to prevent disclosure of a limited number of sensitive government documents, FOIA contains nine statutory exemptions. 5 U.S.C. § 552(b)(1)-(9). "Unlike the disclosure provisions of FOIA, its statutory exemptions 'must be narrowly construed.'" Lion Raisins, 354 F.3d at 1079, (quoting John Doe Agency, 493 U.S. at 152.

The Court reviews the government's withholding of agency records de novo, and the government bears the burden of justifying non-disclosure. 5 U.S.C. § 552(a)(4)(B). "The agency may meet its burden by submitting a detailed affidavit showing that the information 'logically falls within one of the claimed exemptions.'" Minier, 88 F.3d at 800. "However, the government may not rely upon conclusory and generalized allegations of exemptions." Kamman v. IRS, 56 F.3d 46, 48 (9th Cir. 1995).

I.   Exemptions (b)(2) and (b)(7)(E)

Exemption 2 protects from FOIA disclosures "matters that are . . . related solely to the internal personnel rules and practices of an agency." This exemption excludes "law enforcement materials,

5

disclosure of which may risk circumvention of agency regulation" (high 2). Hardy v. Bureau of Alcohol, Tobacco & Firearms, 631 F.2d 653, 656 (9th Cir. 1980); see Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Exemption 2 also excludes matters "in which the public could not reasonably be expected to have an interest" (low 2). Dep't of Air Force v. Rose, 425 U.S. 352, 369-70 (1976); see Schiller, 964 F.2d at 1207.

Exemption (b)(7)(E) protects from disclosure "records or information compiled for law enforcement purposes" where release of such information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Plaintiffs do not challenge the nexus between the documents withheld and a "law enforcement purpose." The parties dispute the interpretation of this statute. Plaintiffs argue that the phrase "if such disclosure could reasonably be expected to risk circumvention" applies to law enforcement techniques, procedures and guidelines. Defendants assert that the "circumvention" phrase only applies to "guidelines," and that law enforcement "techniques and procedures" are categorically exempt from FOIA disclosures.

The Ninth Circuit has not squarely addressed this issue. The courts that have reviewed Exemption 7(E) disclosures have come out on both sides of the issue. Some assert that law enforcement "techniques and procedures" are categorically exempt under 7(E). See e.g., Keys v. Dep't of Homeland Sec., 510 F. Supp. 2d 121, 129 (D.D.C. 2007); Judicial Watch, Inc. v. U.S. Dep't of Commerce, 337

6

F. Supp. 2d 146, 181 (D.D.C. 1997); Smith v. Bureau of Alcohol, Tobacco & Firearms, 977 F. Supp. 496, 501 (D.D.C. 1997) ("Exemption 7(E) provides categorical protection to information related to law enforcement techniques"); Fisher v. U.S. Dep't of Justice, 772 F. Supp. 7, 12 n.9 (D.D.C. 1991) ("Law enforcement agencies' 'non-investigatory' law enforcement records, to the extent that they can be fairly regarded as reflecting techniques or procedures, are now entitled to categorical protection under Exemption 7"). However, other courts apply the "circumvention" phrase to all of Exemption 7(E). See e.g., Davin v. U.S. Dep't of Justice, 60 F.3d 1043, 1064 (3d Cir. 1995) ("Exemption 7(E) applies to law enforcement records which, if disclosed, would risk circumvention of the law"; PHE, Inc. v. Dep't. of Justice, 983 F.2d 248, 249-50 (D.C. Cir. 1993) ("Thus, under both the (b)(2) and the (b)(7)(E) exemptions, the agency must establish that releasing the withheld materials would risk circumvention of the law"); Billington v. Dep't of Justice, 69 F. Supp. 2d 128, 140 (D.D.C. 1999) (the (7)(E) analysis "requires a defendant to show that disclosure would frustrate enforcement of the law"). The Court need not take a side in this debate because, even under the interpretation that applies the "circumvention" phrase to all of exemption 7(E), Defendant carried its burden to justify non-disclosure.

Of the more than one hundred documents challenged by Plaintiffs, in all but five documents, Defendant invokes both Exemptions high 2 and 7(E). Plaintiffs assert that Defendant failed to meet its burden properly to withhold four categories of documents under the Exemptions: (1) the names of databases, names of database reports and modules, and information relating to the

7

use of government watchlists; (2) specific topics for questioning individuals attempting to enter the United States; (3) information relating to CBP's coordination with other law enforcement agencies; and (4) information and records concerning an "Interim Guidance for Border Search/Examination of Documents, Paper and Electronic Information."

### A. Database Names, Reports and Modules, and Watchlist Information

Plaintiffs first argue that because the use of watchlists to screen travelers is a matter of common knowledge, Defendant should release more detailed information about these watchlists and the databases that relate to the watchlists. Plaintiffs assert that this information falls under the "routine technique exception to Exemption 7(E)," which states, "It would not serve the purposes of FOIA to allow the government to withhold information to keep secret an investigative technique that is routine and generally known." Rosenfeld v. U.S. Dep't of Justice, 57 F.3d 803, 815 (9th Cir. 1995). This argument is unpersuasive. The public does not already have routine and general knowledge about any investigative techniques relating to watchlists. The public merely knows about the existence of watchlists. Knowing about the general existence of government watchlists does not make further detailed information about the watchlists routine and generally known.

Plaintiffs also argue that the Privacy Act of 1974 requires the government to release this information. The statute requires agencies that maintain a system of records to publish "the name and location of the system" in the Federal Registrar. 5 U.S.C § 552a(e)(4)(A). Plaintiffs assert that because the names and

8

locations of systems are required to be published in the Federal Registrar, Defendant should again produce this information in the withheld documents. Alternatively, Plaintiffs suggest that Defendant will not release this information because it never published the names in the Federal Registrar in the first place as required by statute. Although in some circumstances, simply withholding the names of databases would be improper, in this case, the names of the databases, reports, modules and information about the operation of watchlists appear within a context in the withheld documents, such that disclosure "could lead to circumvention of CBP law enforcement efforts or facilitate improper access to the database for the purpose of frustrating CBP law enforcement functions." Suzuki Dec., Ex. A (Document 5). Therefore, Defendant has met its burden to withhold these documents.

> B. Specific Topics for Questioning Individuals Attempting to Enter the United States

Plaintiffs challenge Defendant's withholding of specific topics for questioning that CBP uses regarding political views, religious practices, and other activities potentially covered by the First Amendment. Plaintiffs do not request release of the actual questions used during border inspections. Cf. Perrone v. FBI, 908 F. Supp. 24, 28 (D.D.C. 1995) (information properly withheld under Exemption 7(E) that would have disclosed "the exact questions to be asked and their sequence" on a polygraph exam). Releasing the subset of topics for questioning would not permit persons to devise strategies to circumvent the law in the same way that releasing the questions themselves would. However, after in camera review of the documents, the Court concludes that, in this

9

instance, releasing the specific topics for questioning could reasonably be expected to risk circumvention of the law.

### C. Procedures for Coordination With Other Law Enforcement Agencies

Defendant asserts that disclosure of procedures for coordination with other law enforcement agencies risks circumvention of the law because it would permit persons to know what or who triggers an alert to another specific law enforcement agency. Knowing this information would allow individuals to devise strategies to avoid these triggers. See Cozen O'Connor v. Dep't of Treasury, 570 F. Supp. 2d 749, 786 (E.D. Pa. 2008) (exempting material under 7(E) that contains information regarding the timing and the level of governmental cooperation because "terrorist organizations and hostile nations could avoid or misdirect Treasury's sanctions investigations and implementation if they knew what databases and what government sources were being used to gather information about them"). Thus, Defendant carried its burden to exempt this information from disclosure.

### D. Interim Documents

Plaintiffs assert that disclosure of "Interim Guidance for Border Search/Examination of Documents, Paper and Electronic Information" issued to CBP field offices in July, 2007 is warranted because the policy has been superceded by a publicly released document, and therefore, disclosure of an outdated policy could not enable circumvention of the law. Defendant counters that the newer version of the policy does not render the interim policy valueless. Defendant notes that there may be aspects of the interim policy that are still in effect or may be adopted again in the future.

10

The Court reviewed the documents in question and concludes that Defendant properly withheld these documents. The information in the interim policy documents reveals the scope and focus of certain law enforcement techniques, disclosure of which could reasonably be expected to risk circumvention of the law.

E. Exemption 2 Low

As noted earlier, Exemption 2 low also excludes internal personnel rules and practices "which the public could not reasonably be expected to have an interest." Rose, 425 U.S. at 369-70; see Schiller, 964 F.2d at 1207. Plaintiffs challenge the redaction of information on two documents under Exemption 2 low. The first document in question, Bates No. 575, contains information about the electronic storage location on Defendant's computer network of interviewing procedures and data from interviews of persons of interest. The electronic storage location of these data on an internal network is precisely the type of internal agency information that Exemption 2 contemplates. In the second document in question, Bates No. 578, Defendant redacted the name of a database that was formerly used by the CBP Tucson Field Office, and is no longer in use. The Court concludes that the public has no legitimate interest in the name of this obsolete database.

II. Exemption 5

Under Exemption 5, Defendant can refuse to disclose "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This section "entitles an agency to withhold from the public 'documents which a private party could not discover in litigation with the agency.'" Maricopa

11

Audubon Soc'y v. U.S. Forest Serv., 108 F. 3d 1089, 1092 (9th Cir. 1997) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 148 (1975)). Exemption 5 includes the executive "deliberative process" privilege, the purpose of which, "'is to prevent injury to the quality of agency decisions' by ensuring that the 'frank discussion of legal or policy matters' in writing, within the agency, is not inhibited by public disclosure." Id. (quoting Sears, Roebuck, 421 U.S. at 150-51.

To qualify for the deliberative process privilege, the information must be "'predecisional' in nature and must also form part of the agency's 'deliberative process.'" Id. (quoting Sears, Roebuck, 421 U.S. at 151-52) (emphasis in original). Predecisional means that the information has been "prepared in order to assist an agency decisionmaker at arriving at his decision," and "deliberative" means that disclosure "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Assembly of the State of Cal. v. U.S. Dep't of Commerce, 968 F.2d 916, 920 (9th Cir. 1992) (internal quotations and citations omitted).

Defendant seeks to redact hand-written notes on a document entitled "Interim Procedures for Border Search/Examination of Documents, Papers, and Electronic Information [Redacted]" (Bates No. 625-26) under Exemption 5. These hand-written notes are predecisional because they were made while reviewing the document and recorded what the author thought "was significant in order to assist in later deliberations." Suzuki Dec. ¶ 26. They reveal the private deliberations and "personal opinions of the writer rather

12

than the policy of the agency." <u>Assembly of the State of Cal.</u>, 968 F.2d at 920. These notes are deliberative because releasing them would "undermine the agency's ability to perform its functions." <u>Id.</u>

Similarly, DHS properly invoked Exemption 5 to withhold information in an email (Bates No. 679) concerning "internal agency deliberations about the possibility of drafting a standard operating procedure." Suzuki Dec. ¶ 27. The information redacted states a recommendation and would reveal the agency's deliberations and decision-making process.

III. Segregable Portions of Responsive Records

The FOIA statute states, "Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. 552(b). To satisfy this burden, an agency is "required to provide the court with its <u>reasons</u> -- as opposed to its simple conclusion -- for its inability to segregate non-exempt portions of the documents, and also to provide the court with a description of 'what proportion of the information in a document is non-exempt, and how that material is dispersed throughout the document.'" <u>Lawyers' Comm. for Civil Rights of San Francisco Bay Area v. Dep't of the Treasury</u>, No. 07-2590, 2008 WL 4482855, at *14 (N.D. Cal.) (emphasis original) (quoting <u>Mead Data Ctr., Inc. v. Dep't of the Air Force</u>, 556 F.2d 242, 261 (D.C. Cir. 1977). Plaintiffs assert that Defendant did not carry its burden of segregating all non-exempt from exempt information. The Court disagrees. Throughout the <u>Vaughn</u> index and the accompanying affidavit, Defendant explained which information was non-exempt and

13

took care to redact only the exempt information. In many instances, the redactions consist of single sentences, clauses, or single words. The twenty-eight pages withheld in full contain small portions of non-exempt material and these portions are inextricably intertwined with the exempt information. See Mead Data Ctr., 556 F.2d at 261 ("If only ten percent of the material is non-exempt and it is interspersed line-by-line throughout the document, an agency claim that it is not reasonably segregable because the cost of line-by-line analysis would be high and the result would be an essentially meaningless set of words and phrases might be accepted").

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment (docket no. 19) and denies Plaintiff's cross motion for summary judgment (docket no. 20). The hearing scheduled for December 4, 2008 at 2:00 p.m. is vacated. The clerk shall enter judgment and close the file.

IT IS SO ORDERED.

Dated: 11/24/08

_____
CLAUDIA WILKEN
United States District Judge

14